*Vaughn v. State,* 763 S.W.2d 232 (Mo.App. 1988).

The judgment is affirmed.

**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Frank Lee HICKS,
Defendant–Appellant.**

No. 16756.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 15, 1991.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Feb. 4, 1991.

Application to Transfer Denied
March 5, 1991.

William J. Swift, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Presiding Judge.

Frank Lee Hicks (defendant) was convicted of assault in the first degree following a jury trial in the Circuit Court of Wayne County. § 565.050.[1] The jury found defendant guilty of knowingly causing serious physical injury to Quintin Davis. Defendant was sentenced to imprisonment for a term of thirty years. §§ 565.050.2 and 558.011.1(1). This court affirms.

▪ For purposes of appellate review, all evidence that tends to prove defendant's guilt, together with all reasonable inferences that support the verdict of the jury, is accepted as true. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982). Evidence contrary to the verdict is disregarded. *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981).

On April 15, 1989, Quintin Davis was two years old. He lived in rural Wayne County with his mother, Bonnie Davis, and with defendant. On that date Bonnie and defendant took Quintin to a hospital in Poplar Bluff, Missouri. When they arrived at the hospital, Quintin was comatose, suffering from severe brain injury. Most of his body was bruised. Some of the bruises were, by reason of their coloration and swelling, determined to be of recent origin. Others were older.

Initially, Bonnie reported that Quintin was injured from falls from his tricycle and from a couch. She also said, during an interview at the hospital, that Quintin had fallen down stairs a few days earlier. Later, Bonnie stated that defendant caused Quintin's injuries.

---

1. References to statutes are to RSMo 1986.

After Bonnie's statement that defendant caused Quintin's injuries, defendant was questioned. He gave a tape-recorded statement in the presence of the Sheriff of Wayne County, a deputy sheriff, and a case worker employed by the Missouri Division of Family Services. Defendant admitted having done things to Quintin that caused the bruising that was observed. He admitted biting Quintin, causing the teeth marks that were observed on Quintin's back; grabbing the child's legs causing him to fall; "popping" Quintin several times with a wet towel; slapping Quintin; throwing him onto a couch—Quintin would sometimes fall from the couch after defendant threw him on it—; and throwing Quintin onto a chair in a manner similar to the way he had thrown Quintin onto the couch. Defendant had pushed the back of Quintin's tricycle while Quintin was riding it causing the tricycle to turn over backwards onto Quintin. Defendant had "smacked" Quintin on the stomach with his open hand with sufficient force to leave bruising marks of finger imprints.

Defendant said that all this had occurred during two or three weeks in which he lived with Bonnie. Defendant acknowledged that Bonnie would ask him to stop, but that he was reluctant to do so. He said he had told Bonnie, "It ain't hurtin' him." Defendant had seen Bonnie spank Quintin, but he had not seen her hit the child hard enough to leave bruises.

On the evening that Quintin was hospitalized, Quintin had been lifted onto defendant's neck. Quintin was holding onto defendant, but defendant was not holding Quintin. Quintin fell to the floor, landing first on his buttocks, then hitting his head. Defendant stated, in the tape-recorded statement, that Quintin did not get up; that he laid on the floor shaking.

Defendant stated that Bonnie took Quintin into the bathroom. She told defendant that Quintin was hurt. Defendant was reluctant to take Quintin to the hospital initially. According to defendant, he delayed taking the child for 15 or 20 minutes. Quintin was cleaned and placed in clean clothes before being taken to the hospital.

At trial, Bonnie testified that she had told the sheriff that defendant had caused Quintin's injuries. She said she asked defendant "to take the blame." Defendant had agreed to do so. Bonnie was asked why she was coming forward at trial. She answered, "Because I'm the one that done it and I don't think Frank should be punished for it."

Defendant's testimony was also in conflict with the statements he had given prior to trial. At trial, defendant testified that he did not arrive home the night Quintin was hospitalized until approximately 8:30 p.m.; that Bonnie and Quintin were in the bathroom—"She was cleaning him off." Quintin was unconscious and shaking.

A physician testifying at defendant's trial was asked, "Doctor, based upon your training and experience, and in your professional opinion, were the injuries sustained by Quintin Kyle Davis sufficient to create a substantial risk of death or cause serious permanent disfigurement or protracted loss or impairment of the function of one of his bodily members or organs?" The doctor answered, "Definitely." Quintin suffered permanent brain damage as a result of his injuries. He had impaired vision. He could not talk, chew food properly, eat or drink. As a result of his brain injury, Quintin had to be fed every two hours through a surgically placed hole in his stomach.

Defendant presents two points directed to the merits of his appeal. He has also filed a motion with this court by which he seeks remand of this case for additional proceedings before the trial court. Defendant's motion is entitled "Motion to Remand for Evidentiary Hearing on Newly Discovered Evidence and/or Prosecutorial Misconduct." It will be addressed first.

Defendant contends, by his motion, that after his trial and after the time passed in which he was permitted to file his motion for new trial, the state charged Bonnie Davis, the mother of Quintin, with having committed the same offense of which defendant was found guilty—assault in the first degree upon Quintin by knowingly causing physical injury. Defendant argues

that this case should be remanded "for a hearing as to what newly discovered evidence warrants prosecuting Davis for the first degree assault of [Quintin] in order that [defendant] can then file a motion for new trial asserting such matters." Alternatively, defendant argues that the case should be remanded because of prosecutorial misconduct "because Respondent is seeking convictions of two individuals for a crime committed by a single individual."

Defendant cites *State v. Mooney*, 670 S.W.2d 510, 515 (Mo.App.1984), as authority for this court to remand this case for evidentiary hearing to ascertain the existence of "newly discovered evidence." In *Mooney* and in *State v. Williams*, 673 S.W.2d 847 (Mo.App.1984), decided a few months later, the Eastern District of this court found that unique circumstances warranted its remanding each of those cases to permit "newly discovered evidence" to be asserted by means of new post-trial motions. The "newly discovered evidence" in *Mooney* and in *Williams* became known to the respective defendants after their motions for new trial were filed. The Eastern District, in *Mooney*, undertook that action through the exercise of its "inherent power to prevent miscarriages of justice in a proper case by remanding the case to the trial court with instructions that the appellant be permitted to file a motion for new trial upon the grounds of newly discovered evidence." *Mooney, supra*, at 515–16. In *Williams* the court took its action "cognizant of the perversion of justice which could occur if we were to close our eyes to the existence of the newly discovered evidence," and "in light of the State's concession that the evidence exists, it should be heard." *Williams, supra*, at 848.

■ In both *Mooney* and *Williams*, the "newly discovered evidence" was identified to the appellate court and was shown to be of unique circumstances so that, in each case, if believed, the defendant would be completely exonerated. *Mooney, supra*, at 516; *Williams, supra*, at 847. Defendant's claims in this case are unlike those in either *Mooney* or *Williams*. Defendant does not identify any "newly discovered evidence." Rather, he seeks a hearing to inquire whether there is newly discovered evidence. As stated in *State v. Davis*, 698 S.W.2d 600, 603 (Mo.App.1985):

We note that the Supreme Court did not review our action in either *Mooney* or *Williams*, since no motion to transfer was filed. A careful reading of those cases reveals that they involved exceptional circumstances and are thus limited. Furthermore, it is clear that remand is not mandated in cases involving allegations of newly discovered evidence after appeal. A case will only be remanded on the basis of newly discovered evidence after appeal where the court, *in its discretion*, determines that its inherent power must be exercised in order to prevent a miscarriage of justice.

Here, as in *Davis*, circumstances do not fall within the narrow limits of *Mooney* or *Williams*.[2] Defendant has not shown the existence of any newly discovered evidence that, but for this case being remanded to permit such additional evidence to be included in the record, would result in a miscarriage of justice. Defendant's request that this case be remanded for hearing to search for newly discovered evidence in order that "a motion for new trial asserting [such] matters" may be filed is denied.

Defendant's alternative request that this case be remanded for claimed "prosecutorial misconduct" is also denied. Defendant has cited no Missouri case that warrants the action he seeks. He has referred to the due process clause of the Fourteenth Amendment of the United States Constitution and to Mo.Const. art. I, § 10. He also cites *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984); *Rochin v. California*, 342 U.S. 165, 172–74, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952); and *Adamson v. California*, 332 U.S. 46, 57, 67 S.Ct. 1672, 1678, 91

---

**2.** By discussing *Mooney* and *Williams* and referring to the Eastern District's holdings in those cases, no determination is made that, absent the principles therein being pronounced by the Supreme Court, this district would or would not follow those principles. That issue need not be, and is not, decided by this case.

L.Ed. 1903 (1947). Defendant cites those cases for the proposition that criminal prosecutions must comport with prevailing notions of fundamental fairness and that due process requires that an accused be protected from unfair convictions. Those principles are acknowledged; however, a study of the cases cited by defendant fails to reveal any similarities in their facts to the facts in this case.

■ Defendant's request that this court remand his case because of "prosecutorial misconduct" is a collateral attack upon the judgment and sentence entered by the trial court. Rule 29.15 affords the remedy whereby a person convicted of a felony may, after trial, collaterally attack a conviction or sentence for claimed violations of the Missouri Constitution or Missouri statutes or of the Constitution of the United States. The procedure established by Rule 29.15 is "the exclusive procedure by which such person may seek relief in the sentencing court" for those claims. Defendant had adequate time in which to invoke the procedures permitted by Rule 29.15. His transcript on appeal was filed in this court April 2, 1990. He had thirty days thereafter in which to file a motion for post-conviction relief under Rule 29.15. The charges against Bonnie Davis were initiated in February 1990. Defendant's request to remand this case because of alleged prosecutorial misconduct is denied. Defendant's Motion to Remand for Evidentiary Hearing on Newly Discovered Evidence and/or Prosecutorial Misconduct is overruled.

■ Defendant's first point on appeal contends that the trial court erred by not declaring a mistrial because of comments the prosecuting attorney made during closing argument. Defendant complains about the following remarks:

> Let's take the worst case scenario here. If you listen to what the defense counsel is saying and you find the defendant guilty because of this great evidence that somebody else came up and pled and confessed to the charge here on the stand and you find him not guilty, what happens next? Okay, let's say the

State charges Bonnie Davis with the crime. Mr. Hicks, he's no longer on the hook, double jeopardy is attached, so he gets back up on the stand and says I did it. I did it all. I lied. Then you have another jury and they say well, somebody else confessed to the crime. Must be a reasonable doubt.

Defendant made no objection to the closing argument at trial. Neither did he raise the issue set forth in his first point on appeal in his motion for new trial. He seeks "plain error" review by this court as permitted by Rule 30.20. As this court stated in *State v. Cooper*, 673 S.W.2d 848, 850 (Mo.App.1984):

> Requests for relief from improper argument must be timely made to preserve them for appellate review. *State v. Fanning*, 647 S.W.2d 177, 178 (Mo.App.1983). By failing to request a mistrial defendant has not preserved this point for review. Id. A party cannot fail to request relief, gamble on the verdict, and then if adverse, request relief for the first time. Id.

"In jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial...." Rule 29.11(d).

Assuming, *arguendo*, but without so finding, that the remarks about which defendant complains were improper, this court does not find that manifest injustice or miscarriage of justice resulted. Defendant's first point is denied.

■ Defendant's second point states as follows:

> Frank Hicks' conviction for first degree assault followed by the initiation of criminal proceedings against Bonnie Davis for the same crime, violates Frank's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution because respondent's attempt to convict two people for a crime committed by a single individual violates the prevailing notation of fundamental fairness that a

single person be convicted of an act committed by a single person.

Rule 30.06(d) requires each point relied on to "state briefly and concisely what actions or rulings of the court are sought to be reviewed." Defendant's second point fails to identify any action or ruling taken or made by the trial court as the basis for the complaint defendant now makes. Defendant's second point presents nothing for appellate review. For that reason, it is denied. *Thummel v. King*, 570 S.W.2d 679, 684–85 (Mo. banc 1978); *State v. Maxson*, 755 S.W.2d 277, 281 (Mo.App.1988).

The judgment and sentence of the trial court are affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.