STATE of Missouri, Respondent,

v.

**Deandrea GRAY, Appellant.**

**No. WD 56200.**

Missouri Court of Appeals, Western District.

May 2, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2000.

Application for Transfer Denied Aug. 29, 2000.

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before: Presiding Judge SPINDEN, Judge LOWENSTEIN and Judge ULRICH.

HAROLD L. LOWENSTEIN, Judge.

## FACTS

Appellant, Deandrea Gray, appeals from his convictions and concurrent 12 and 3 year sentences, as a persistent offender (§ 565.016.3, RSMo 1994) (all statute references hereafter refer to RSMo 1994) for assault in the first degree (§ 565.050) and armed criminal action (§ 571.015.1).

Appellant's convictions arose from the following facts taken in the light most favorable to the verdict. *State v. Smith,* 944 S.W.2d 901, 916 (Mo. banc 1997). William Smith was a confidential informant for the police department who, after "working off" his own drug case in which he was arrested for possession of crack cocaine, had an arrangement with undercover police officers to assist them in making drug busts for an arranged fee of $30 for every narcotics purchase made. On April 24, 1997, Smith suggested to Officer Mark Sumpter that they go to a "drug house" from which he had previously purchased narcotics. Accordingly, Smith and Officer Sumpter arrived at the spoken of apartment complex at approximately 1:30 p.m., while three other undercover Kansas City police officers parked their unmarked cars at nearby locations to provide additional surveillance and back-up.

Although Officer Sumpter and Smith were initially planning on approaching the apartment together, once they arrived it appeared that Smith's usual contact was not home. As a result, Smith approached the apartment alone, wired with a listening device. Two young black men answered the door, and at that point Officer Sumpter

turned off the listening device to ensure the men could not hear any feedback from the receiver. One of the men was Arnette Kelley, who stated he had been looking for Smith. Smith proceeded to ask Kelley for "two dimes." Kelley told Smith to wait in the landing area at the bottom of the stairs while he walked up to the apartment. The other man, presumably the appellant, Deandrea Gray, sat at the bottom of the stairs with Smith.

Kelley returned moments later at the top of the stairs with a .22 caliber rifle, accused Smith of recently burglarizing their apartment, and then shot Smith six times; four times in the legs and once each in the hip and back. Gray crouched down on the steps he was sitting on while this was occurring. As Kelley walked down the steps firing shots, Smith tried to protect his head with his hands while at the same time trying to get himself out of the apartment building. In Smith's attempt to get out of the building, Officer Sumpter momentarily saw a bloody hand and one of Smith's shoes before he was pulled back into the apartment, apparently by Gray.

Once pulled back into the apartment, Smith was beaten with the butt of the rifle at the bottom of the stairs. After hitting Smith once with the rifle in the front of his head, Kelley stepped aside. Smith then felt someone whom he could not see strike him once or twice on the back of the head with the rifle, shattering the stock of the rifle before he fell unconscious. Smith presumed Gray knocked him unconscious since he believed there were only two attackers and Kelley stood next to him before he lost consciousness.

When Officer Sumpter heard what he believed to be gunshots, he called for backup. When the officers approached the house, they testified that two or three men besides Smith left the house and headed down an alley to the east of the apartment complex. Officers Sumpter and Pelter followed the men, while Officer Moore stayed behind to make sure no one else left the apartment. Officer Scheer parked his car at the south end of the alley to cut the men off. When the men who fled the apartment heard sirens and saw police cars, they split up, two running east and the other, Gray, running west.

Officer Sumpter followed Gray into a laundromat and arrested him near the restroom in the back of the facility. Officer Scheer and Officer Jacobson caught up with and arrested Kelley, who had run into an abandoned building. The third person being chased, Melvin Backmon, was apprehended and arrested in the alleyway.

Back at the apartment, Officer Moore saw no one come out of the building except Smith, who "scooted out on his butt, covered in blood." Smith had several large bumps on his head, but was conscious, and was then taken to the hospital.

That evening Gray was interviewed, and after being read his Miranda rights and agreeing to talk to the police, he was able to account for his whereabouts until about noon that day. However, he could not recall specifically what he was doing between 12:00 and 1:30 that afternoon. He explained that he ran from the police because he had a half-smoked marijuana cigarette on his person, which he subsequently consumed before being taken into custody.

From a photospread, Smith later identified Kelley as the gunman, Gray as the man who had pulled him back into the apartment, and Backmon as a person he recognized from the neighborhood.

Smith's gunshot wounds resulted in his left leg and foot being numb, being in a wheelchair, and being unable to walk up until the time of the trial. He also anticipated surgery that was doubtful to correct all of the nerve damage to his back and freedom of movement he had previous to the incident.

## STANDARD OF REVIEW

A reviewing court accepts as true all evidence favorable to the State, includ-

ing all favorable inferences drawn from the evidence, and disregards all contrary evidence and inferences, in considering a challenge to the sufficiency of the evidence. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). An appellate court only determines whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt, not whether the verdict was against the weight of the evidence. *Smith*, 944 S.W.2d at 916.

## POINTS RELIED ON

▉ Appellant first argues that the trial court erred in overruling his motion for judgment of acquittal at the close of all of the evidence. He claims the State failed to prove beyond a reasonable doubt that he was guilty of assault in the first degree as there was no evidence presented establishing that his conduct or the conduct of his codefendant *approached the consummation* of creating a substantial risk of death or of causing serious physical injury to Smith.

Appellant was convicted of assault in the first degree under § 565.050, which states "[a] person commits the crime of assault in the first degree if he *attempts* to kill or knowingly causes or *attempts* to cause serious physical injury to another person." Serious physical injury was defined in the jury instructions and in accordance to § 565.002(6) as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."

Appellant argues that the definition of *"attempt"* as it is used in § 565.050 bears the common law meaning (that the defendant must *"nearly approach the consummation"* of the offense) as opposed to its definition as used in the criminal code (a *"substantial step"* towards the commission of the offense). Appellant argues that the more rigorous and more difficult to prove standard of the common law meaning (that the defendant must *"nearly approach the consummation"* of the offense) should be used in the case at bar in accordance to *State v. Reyes*, 862 S.W.2d 377, 386 (Mo. App.1993).

However, as respondent has pointed out, this exact issue has been resolved while the current case was pending on appeal by a decision handed down by the Supreme Court of Missouri, *State v. Withrow*, 8 S.W.3d 75 (Mo.banc 1999). *Withrow* specifically overruled *Reyes* holding that the word *"attempt"* when used in the criminal code means a *"substantial step"* toward the commission of an offense. *Withrow* went into great detail explaining how the two types of *"attempt"* had been incorrectly combined in the past as portrayed in *Reyes. See Withrow, supra; Reyes supra. Withrow* further explicitly overruled several cases that had relied on the misstatement of law, ultimately holding "[a]n *attempt* to commit an offense, regardless of whether the *attempt* is under sec. 564.011 or under separate provisions proscribing attempting a specified crime, means a *substantial step* toward the commission of an offense." *Id.* at 80.

Accordingly and after the decision in *Withrow*, the remaining issue in Appellant's first point is to determine whether or not the appellant took a *substantial step* toward killing or causing serious physical injury to Smith by beating him. A *substantial step* is defined under § 564.011 as "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

The decision of this court will be aided by analyzing other decisions in which a *substantial step* towards the commission of a crime resulted in attempt convictions. In *In re J_ R_ N_, Jr.*, 687 S.W.2d 655 (Mo.App.1985), a minor was committed to the Director of Youth Services based upon a finding that he had committed the crime of assault in the first degree. The minor entered a hotel carrying a lug wrench, and asked for the manager by name. This alone was held to constitute *attempt* and a

*substantial step* toward the commission of the defendant's objective. No contact or injury ever evolved.

Further, *State v. Brokus,* 858 S.W.2d 298 (Mo.App.1993) is a case that resulted in a conviction for attempted felonious restraint. The victim was walking to school when a car pulled up and the defendant asked her if she wanted a ride. When she responded no, the defendant ordered her to get in as she noticed his penis was exposed and he was masturbating. As she tried to walk past the car, the defendant reached through the passenger side window, grabbed the victim's arm and attempted to pull her into the vehicle. The victim, fortunately, broke free and ran to school.

On appeal, the defendant argued that the State failed to make a submissible case of attempt because "no rational trier of fact could find that any of [defendants] actions constituted a *substantial step* toward the commission of a felonious restraint because the evidence was insufficient to support a finding that victim was 'exposed to a substantial risk of serious physical injury.'" *Id.* at 300. The court held that because it is "certainly within the common experience of jurors to know that car windows are not designed for entering or leaving a vehicle and infer that protracted impairment of one's limbs can result from being forcibly dragged through a car window," the evidence was sufficient to support a jury finding that "defendant's actions constituted a *substantial step* toward the commission of felonious restraint." *Id.* at 301. *See also State v. Logan,* 809 S.W.2d 135 (Mo.App.1991) (Court of appeals held there was sufficient evidence to convict defendant of attempt of robbery when defendant took a *substantial step* toward the commission of the crime of robbery by confronting victim with what was not a gun, but he intended for, and victim did in fact, perceive to be a gun.)

In comparing the case at bar to those above, in which no injury or result occurred of any kind and attempt convictions were still upheld, it is apparent to this court that Gray's actions constituted first degree assault. Smith was shot and then beaten with the butt of a rifle until the stock shattered, ultimately knocking Smith unconscious. This is certainly enough for a reasonable jury to find the appellant took a *substantial step* towards the crime of attempt to kill or cause serious physical injury to Smith. Accordingly, it was certainly reasonable for the jury to find the defendant guilty beyond a reasonable doubt of attempt; the element necessary for a first degree assault conviction. Point denied.

■ Appellant in his other point contends this case should be remanded to the trial court for an evidentiary hearing on a motion for new trial based on newly-discovered evidence. Appellant claims that since his incarceration, he has met another prisoner who is willing to testify that he was at the apartment just a few minutes before the victim was shot and beaten that morning, and that Gray was not present. Appellant contends this information (which it must be noted does not even claim that the inmate was present at the time the beating occurred, but rather right before the incident) "is so material, noncumulative and exculpatory in nature... that it will produce a different result at a new trial."

■ However, Missouri statutes and rules do not provide a specific means for a criminal defendant to present claims of newly discovered evidence after the time to file a motion for new trial has expired. *State v. Garner,* 976 S.W.2d 57, 60 (Mo. App.1998). Not being timely, the amendment to a motion for new trial preserves nothing for review, and, procedurally, is a nullity. *State v. Young,* 943 S.W.2d 794, 799 (Mo.App.1997) (citation omitted). The only formally authorized means for a criminal with a late motion to seek relief based on newly-discovered evidence is by application to the governor for executive clemen-

cy or pardon pursuant to the Missouri Constitution. *Id.*

Courts have, however, recognized that in "extraordinary cases," it may remand the case as plain error (Rule 30.20) or pursuant to the court's inherent power to prevent a miscarriage of justice. *State v. Ramsey*, 874 S.W.2d 414, 417 (Mo.App. 1994). Notwithstanding, that category has been reserved for those cases involving newly-discovered evidence that "would have completely exonerated the defendant of the crime for which he or she was charged." *State v. Hill*, 884 S.W.2d 69, 76 (Mo.App.1994).

As the State points out in its brief, there appear to be only three cases in Missouri that have held that claims may be raised for the first time after untimely filing a motion for new trial. The first two, *State v. Mooney*, 670 S.W.2d 510 (Mo. App.1984), and *State v. Williams*, 673 S.W.2d 847 (Mo.App.1984), both contained extraordinary circumstances that are clearly distinguishable from the case at hand. In *Mooney*, the defendant was convicted of molesting a minor, and the only evidence to support the conviction was that of the minor. After the conviction and sentencing, one of the defendant's alibi witnesses tape-recorded a conversation with the victim in which the victim admitted his testimony was false and that he made up the entire incident.

In *Williams*, both the prosecuting attorney and the Attorney General filed affidavits in the Court of Appeals agreeing that jurisdiction should be returned to the trial court to hold a hearing on the defendant's motion for new trial based on newly discovered evidence. Due to the agreement, belief and recognition by both parties that the information contained in the defendant's motion was true and accurate, the court overlooked the time constraints and remanded the case to the trial court.

The only other case in which the court of appeals remanded a case to the trial court after newly-discovered evidence was untimely brought up was *State v. Post*, 804 S.W.2d 862 (Mo.App.1991). This case was remanded on the basis of jury misconduct, not "newly-discovered evidence" as claimed to have been found by the appellant here. As such, the case at bar is clearly distinguishable as a fellow inmate coming forward with his testimony is far from the issue of jury misconduct.

Contrary to the above cited cases, all other situations in which a request has been made to remand a case on the basis of "newly-discovered evidence," the request has been denied. *See generally State v. Hubert*, 923 S.W.2d 434 (Mo.App. 1996); *State v. Bransford*, 920 S.W.2d 937 (Mo.App.1996); *State v. Ramsey*, 874 S.W.2d 414 (Mo.App.1994); *McCauley v. State*, 866 S.W.2d 892 (Mo.App.1993); *State v. Westcott*, 857 S.W.2d 393 (Mo.App. 1993); *State v. Menteer*, 845 S.W.2d 581 (Mo.App.1992); *State v. Hicks*, 803 S.W.2d 143 (Mo.App.1991); *State v. Hamilton*, 732 S.W.2d 553 (Mo.App.1987); *State v. Davis*, 698 S.W.2d 600 (Mo.App.1985).

In the case at bar, the affidavit verifying the alleged "newly-discovered evidence" was executed by a fellow inmate and asserts facts that are greatly opposed to the undisputed evidence presented at trial. No new facts were presented in the affidavit, only contradictory statements. Considering all other evidence, including both Smith's testimony as well as the police officers' testimony, also lead to Gray's conviction, the affidavit of the inmate alone is not sufficient evidence that "would have completely exonerated the defendant of the crime for which he was charged." *Hill*, 884 S.W.2d at 76.

It is both unfavored and completely in this court's discretion to determine if a defendant with an untimely filed motion for a new trial based on "newly-discovered evidence" should be allowed a new trial. The "newly-discovered evidence" is a fellow inmate's testimony as to who was in the apartment moments before, not even at the time of the incident. Further, it has no proof of credibility nor would it com-

pletely exonerate Gray. The newly discovered evidence presented does not rise to the level to authorize Rule 30.20 relief. Therefore, this point must be denied.

## CONCLUSION

The judgment of the trial court is affirmed in whole.

All concur.