**STATE of Missouri, Respondent,**

v.

**Lamon E. CLARK, Appellant.**

**No. WD 59672.**

Missouri Court of Appeals, Western District.

May 30, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2003.

Application for Transfer Denied Aug. 26, 2003.

Patrick W. Peters, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Anne E. Edgington, Assistant Attorney General, Jefferson City, MO, for respondent.

Before HOWARD, P.J., and LOWENSTEIN and HARDWICK, JJ.

VICTOR C. HOWARD, Presiding Judge.

Lamon E. Clark appeals from his conviction of unlawful use of a weapon, § 571.030 RSMo 2000. Clark raises two points on appeal. First, he contends that his case should be remanded for a new trial because newly discovered evidence shows that he was not involved in the crime. Second, he contends the trial court erred in denying his motion for mistrial after the interrogating police officer commented on "another investigation" and Clark's "criminal history printout" during trial.

We affirm.

### Facts

Lamon Clark was charged as a prior offender with unlawful use of a weapon in a drive-by shooting. The evidence presented at trial, in the light most favorable to the verdict, is as follows.

On December 19, 1997, at approximately 4:30 p.m., cousins Myron Frazier, Chris Frazier, and Michael Shelby were walking down the street in the area of 41st Street and Prospect in Kansas City on their way to Chris Frazier's mother's house. As they were walking, a yellow four-door Buick LeSabre drove by and they showed their gang signs to the men in the car and the men in the car showed their gang signs in return. The man driving the car was William Irving. Appellant Lamon Clark was riding in the front seat on the passenger's side. Ray–Mond Yates and Vernon Kirkwood were riding in the back of the car.

After its first pass by, the car circled around the block and drove back by twice. Each time, both groups flashed their gang signs. Then, on the third time around, the car stopped in front of Chris Frazier's mother's house.

Words were exchanged and Appellant asked Shelby if he was "tripping." Shelby said "no" and then asked Appellant if he was "tripping." Shelby took his coat off, thinking they were all going to fight. Shelby then saw a small black semi-automatic handgun pointed at him across the driver of the car. As soon as he saw the gun, Shelby turned around and started running toward the house. Appellant leaned across Irving and fired one shot from the handgun, hitting Myron Frazier in his left arm and Shelby in his left bicep.

Minutes later, the police arrived, and as Shelby and Myron Frazier were talking to Officer Joseph Rooney on the porch, they saw the car drive by again and pointed it out to Rooney. After Shelby and Myron Frazier identified the car, Officer Rooney contacted Sergeant Patrick Witcher, who was on his way to the scene, and told him where the car was headed. A helicopter that was in the area was given the description of the car.

Officer Larry McCrea of the Kansas City police department was flying as an observer in the police helicopter when he was given the description of the car. Officer McCrea and the helicopter pilot spotted the vehicle on Olive Street, at about 37th Street. They maintained aerial surveillance and followed it to 34th Street, where the vehicle suddenly stopped and three individuals exited the vehicle.[1] Based on information provided to them by Officer McCrea, officers on the ground located Irving and Yates and arrested them on the street. Appellant was later arrested and questioned by Detective Anthony Cooper at the police station.

The jury found Appellant guilty of unlawful use of a weapon. The court overruled Appellant's motion for new trial and sentenced him to fifteen years' imprisonment in the Missouri Department of Corrections.

## Point I

Clark's first point on appeal is that his case should be remanded for a new trial because newly discovered evidence shows that he was not involved in the crime. Specifically, Clark argues that the affidavit of Vernon M. Kirkwood, filed with this court, totally exonerates him of any involvement in the shooting.

■ "New trials based on newly discovered evidence are disfavored." *State v. Reed*, 971 S.W.2d 344, 349 (Mo.App. W.D. 1998). In *State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997), the court stated as follows:

> To warrant a new trial based on post-trial newly discovered evidence, the defendant must show: (1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that it was not discovered sooner; (3) the evidence is so material that it would probably produce a different result on a new trial; and (4) it is not cumulative only or merely impeaching the credibility of the witness.

■ Appellant's claim of newly discovered evidence was not presented to the trial court in a timely motion for new trial. Rather, it is raised for the first time before this court. "Missouri statutes and rules do not provide a specific means for a criminal defendant to present claims of newly discovered evidence after the time to file a motion for new trial has expired." *State v. Gray*, 24 S.W.3d 204, 208 (Mo.App. W.D. 2000); *accord State v. Skillicorn*, 944 S.W.2d 877, 896 (Mo. banc 1997) (finding that "[o]nce the time within which to file a motion for new trial has expired, a remedy [based on a claim of newly discovered evi-

1. Ray–Mond Yates testified that Vernon Kirkwood had been dropped off after the shooting.

dence] no longer lies through direct appeal"). The only formally authorized means to seek relief for a criminal who has not raised his claim of newly discovered evidence in a timely motion for new trial is by application to the governor for executive clemency or pardon pursuant to the Missouri Constitution. *Gray,* 24 S.W.3d at 208–09. Courts have, however, recognized that in extraordinary cases, a court may remand the case as plain error under Rule 30.20 or pursuant to the court's inherent power to prevent a miscarriage of justice. *Id.* at 209. "Notwithstanding, that category has been reserved for those cases involving newly discovered evidence that 'would have completely exonerated the defendant of the crime for which he or she was charged.'" *Id.* (quoting *State v. Hill,* 884 S.W.2d 69, 76 (Mo.App.1994)). It is completely in this court's discretion to determine if a defendant with an untimely filed motion for a new trial based on newly discovered evidence should be allowed a new trial. *Id.*

Vernon Kirkwood's affidavit states, in relevant part, that there were five occupants in the vehicle at the time of the shooting and that Clark was not in the vehicle.

Appellant argues that Kirkwood's affidavit is significant because of the weakness of the State's case. Clark notes that the two victims of the shooting, who saw and exchanged words with the shooter, did not identify him. He further notes that he denied involvement, he provided Detective Cooper with his place of employment, and his mother and a customer testified that he was at work at the time of the shooting.

Appellant contends that the State's case depended "in its entirety" upon the testimony of Ray–Mond Yates. Appellant points out that Yates lied about many details of the shooting, including the number of people in the car, the route they drove,

a clothing description, and other details. At trial, Yates admitted he lied about the details to the police. During a deposition just before trial, Yates stated for the first time that a fourth person was present at the time of the shooting. Yates described the person as "Vernon. I didn't know his last name." Yates admitted lying to the police about a fourth person.

Appellant further contends he had no other information available regarding "Vernon." In early 2001, defense counsel learned of a person named Vernon and discovered that he was in the car with William Irving and Ray–Mond Yates on December 19, 1997.

■ As previously stated, Appellant did not include his claim regarding newly discovered evidence in a timely motion for new trial. Therefore, in order for us to exercise our discretion to remand for a new trial based on newly discovered evidence, Appellant must show that Kirkwood's affidavit would have completely exonerated him of the crime of unlawful use of a weapon. We conclude that Appellant has failed to make this showing. Construing the evidence in the light most favorable to the verdict, Yates identified Appellant as the shooter. Although Appellant contends Yates was not a credible witness, the jury apparently chose to believe his testimony. At best, Kirkwood's affidavit could impeach Yates; it would not totally exonerate Appellant. Even if Appellant had included his claim of newly discovered evidence in a timely motion for new trial, he would have had the burden to show that the evidence is not merely to impeach the testimony of a witness. *State v. Haley,* 73 S.W.3d 746, 754 (Mo.App. W.D.2002).

We hold that Appellant is not entitled to a new trial based on newly discovered evidence. Point I is denied.

## Point II

Clark's second point on appeal is that the trial court erred in denying his motion for mistrial after the interrogating officer, Detective Anthony Cooper, commented on "another investigation" and Clark's "criminal history printout" during his trial testimony.

The appropriate standard of review was set forth in *State v. Albanese,* 9 S.W.3d 39, 51 (Mo.App. W.D.1999), as follows:

The standard of review for a trial court's refusal to grant a mistrial is abuse of discretion. "The decision whether to declare a mistrial rests largely within the discretion of the trial court because the trial court has observed the incident that precipitated the request for a mistrial and is in a better position than is the appellate court to determine what prejudicial effect, if any, the incident had on the jury." "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration...." " 'Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant cannot be removed any other way.' "

(Citations omitted.)

██ "Criminal defendants have a right to be tried only for the offense for which they are charged." *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989). Proffered evidence runs afoul of this rule if it shows that the defendant has committed, been accused of, been convicted of, or definitely associated with another crime or crimes. *Id.* The rule does not apply when no evidence links the defendant to the uncharged crime. *State v. Briscoe,* 913 S.W.2d 812, 814 (Mo.App. W.D.1995).

"The necessary nexus between the defendant and the uncharged crime does not exist when the defendant's involvement in the other crime is speculative, when the defendant is not identified as the perpetrator, or when the other crime is attributed to someone other than the defendant." *Id.* at 814–15. It is the defendant's burden to show that the challenged testimony constituted evidence of other crimes. *State v. Wallace,* 952 S.W.2d 395, 397 (Mo.App. W.D.1997).

██ In analyzing the prejudicial effect of an uninvited reference to other crimes evidence, we examine (1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning (if the prosecutor asked the question) or whether the prosecution deliberately attempted to elicit the comments; (2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; (3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; (4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and (5) whether in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt. *State v. Costa,* 11 S.W.3d 670, 677 (Mo.App. W.D. 1999).

The first statement Appellant argues warranted a mistrial occurred during redirect examination of Detective Cooper. Cooper testified as follows:

Q. Did [Clark] ever tell you that he was at his mom's house or his mom's used car lot?

A. No.

Q. C & C Auto, did you later learn that was his mother's business?

A. In another investigation, yes, I did.

\*   \*   \*   \*   \*   \*

Defense counsel objected and requested a mistrial. The court denied defense counsel's request. During a discussion at the bench, it became clear that the investigation to which Cooper referred did not involve Appellant, his mother, or C & C Auto. The court then suggested that the appropriate remedy would be for the State to ask Cooper whether the investigation revolved around Appellant, his mother, or C & C Auto. Redirect then resumed as follows:

Q. Detective Cooper, I want to take you back to the last question before we had a break and that was how you learned that C & C Auto was owned by Lamon Clark's mother and I believe your answer was through an investigation, would that be accurate?

A. That would be accurate, yes.

Q. At this time I am going to ask you, did that investigation have anything to do with Lamon Clark?

A. No, it didn't.

Q. Did that investigation have anything to do with the mother, Sherrie Clark?

A. No.

Q. Did that investigation have anything to do with C & C Auto?

A. No, it did not.

\*   \*   \*   \*   \*   \*

■ Appellant claims that Cooper's testimony that he learned C & C Auto was his mother's business "in another investigation" warranted a mistrial because it presented the jury with evidence that Detective Cooper had conducted a criminal investigation that brought him into contact with Sherrie Clark and C & C Auto, which injected other crimes for which Appellant was not on trial and "disparaged defen-

dant's alibi." We disagree. Detective Cooper's initial testimony was that he learned C & C Auto was Appellant's mother's business through another investigation. Following defense counsel's objection, Detective Cooper testified that the investigation at issue had nothing to do with Appellant, Sherrie Clark, or C & C Auto. Detective Cooper's testimony clearly did not constitute evidence of other crimes for which Appellant was not on trial, nor did it disparage Appellant's alibi.

The second statement Appellant claims warranted a mistrial was elicited during re-cross of Detective Cooper regarding his ascertainment of Appellant's place of employment. In order to put the statement at issue in context, we provide the testimony that preceded it, which began during defense counsel's cross-examination of Cooper:

A. Among the questions I asked [Clark] was his place of employment, which was C & C Auto. He didn't tell me that he was at C & C Auto at the time of the offense, at the time the offense occurred.

. . .

Q. And he told you he worked there since 8 of '97?

A. I believe it is. I would have to look at the detective investigation report.

. . .

Ms. Sullivant: [on redirect] Is that a fairly apparent question, is that an initial question that you asked for a preliminary matter before you get to the heart of the interrogation?

The Witness: Yes, that's correct.

. . .

Mr. Peters: [on re-cross] And you asked that because if somebody is at work or at home at the time of offense, you have the work and the home address taken from them?

The Witness: Not necessarily, no. If a detective investigation which gives me

some background information, that is not readily apparent from the criminal history printout, for example. Number of children I think is a question that is asked.

\* \* \* \* \* \*

Defense counsel objected to Detective Cooper's reference to a criminal history printout.[2] The court stated that it was denying Appellant's request for a mistrial because Cooper's answer was "a general answer as to a criminal procedure" rather than a specific answer implicating Appellant with a criminal history.

Appellant contends this testimony warranted a mistrial because it presented the jury with evidence that he had a criminal history and improperly injected other crimes for which he was not on trial. Again, we disagree. As suggested by the trial court, while the line of questioning concerned Detective Cooper's interrogation of Appellant, the question and answer at issue concerned general investigative procedure that is, the reason for ascertaining a suspect's place of employment and did not concern Appellant specifically. Detective Cooper's testimony in no way suggested that Appellant had a criminal history, and the testimony did not otherwise improperly inject other crimes for which Appellant was not on trial. Point II is denied.

The judgment of the trial court is affirmed.

LOWENSTEIN and HARDWICK, JJ., concur.

---

**2.** Defense counsel did not move for a mistrial following this testimony. In fact, it is unclear what relief defense counsel sought. The trial court apparently construed the objection as a request for mistrial, as indicated by the judge's remarks during the bench conference. Therefore, we will give Appellant the benefit of the doubt and treat this claim of error as properly preserved.