**Deandrea GRAY, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 62949.

Missouri Court of Appeals, Western District.

July 30, 2004.

---

Susan L. Hogan, Kansas City, MO, for appellant.

Andrea K. Spillars, Assistant Attorney General, Jefferson City, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and SMART, JJ.

PATRICIA BRECKENRIDGE, Presiding Judge.

Deandrea Gray appeals the denial of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. Mr. Gray was convicted of the class B felony of

assault in the first degree, under section 565.050, RSMo 2000,[1] and the class A felony of armed criminal action, under section 571.015. On appeal, Mr. Gray argues that he alleged sufficient facts entitling him to a hearing on his claims that his trial counsel was ineffective for failing to take timely steps to obtain the clothing that he was wearing at the time of his arrest; failing to impeach two of the State's witnesses and cross-examine another witness about inconsistencies; and failing to investigate and call three witnesses.

This court finds that Mr. Gray's allegations concerning his trial counsel's failure to obtain his clothing were insufficient to warrant relief, and his allegations concerning his trial counsel's failure to raise inconsistencies were refuted by the record. Additionally, Mr. Gray's allegations concerning his trial counsel's failure to investigate and call as witnesses the mother and father of the co-participant in the crime were insufficient to warrant relief. The judgment denying those claims without an evidentiary hearing is affirmed. Mr. Gray's allegations concerning his trial counsel's failure to investigate and call the co-participant in the crime were sufficient to warrant an evidentiary hearing. Therefore, the denial of Mr. Gray's claim that his trial counsel was ineffective for failing to investigate and call the co-participant in the crime is reversed, and the cause is remanded to the motion court for an evidentiary hearing on this claim.

### Factual and Procedural Background

On the morning of April 24, 1997, William Smith, an ex-convict working with the Kansas City Missouri Police Department as a confidential informant, called Detective Mark Sumpter and suggested that they attempt to purchase crack cocaine at a drug house from where Mr. Smith had previously bought drugs. Detective Sumpter and Mr. Smith went to the drug house, which was an apartment building, later that afternoon. Detective Sumpter parked his car in front of the building. Other undercover officers parked their cars in the area.

Detective Sumpter placed a listening device on Mr. Smith and sent him to the apartment building. Mr. Smith knocked on the door. Mr. Gray and Arnett Kelley came to the door, stepped outside, and began talking to Mr. Smith. Mr. Kelley told Mr. Smith, "I've been looking for you. Come on in." Mr. Smith went inside. Once inside, Mr. Smith gave Mr. Kelley $20 and asked for "two dimes," which is two pieces of crack cocaine. Mr. Kelley told Mr. Smith to wait in the landing area at the bottom of the stairs while Mr. Kelley walked upstairs. Mr. Smith waited on the landing with Mr. Gray, who sat on the stairs.

Moments later, Mr. Kelley was standing at the top of the stairs, holding a rifle. Mr. Kelley accused Mr. Smith of having broken into his house in the past. Mr. Kelley then walked down the stairs, firing shots at Mr. Smith. While this was happening, Mr. Gray crouched down on the steps. Mr. Smith was struck by six bullets—two in his left leg, two in his right leg, one in his hip, and one in his back. As he was being shot, Mr. Smith attempted to get out the door. He was able to open the door a crack and was trying to crawl out the door when Mr. Gray grabbed him from behind and pulled him back inside. Mr. Gray and Mr. Kelley proceeded to beat Mr. Smith on the front and back of his head with the butt of the rifle until Mr. Smith lost consciousness.

Meanwhile, after hearing gunshots and seeing Mr. Smith attempt to crawl out the

---

1. All statutory references are to the Revised Statutes of Missouri 2000.

door, Detective Sumpter called for back-up. Detective Sumpter then saw Mr. Gray and two other men come out of the apartment. Detective Sumpter followed the three men into an alley. When a police car with its lights and sirens on drove by, the three men split up and began running. Detective Sumpter followed Mr. Gray, who ran into a restroom in the back of a laundromat. Detective Sumpter arrested Mr. Gray. Mr. Kelley and the third man, Melvin Backmon, were arrested by other officers.

The next day, Detectives Michael Luster and Harold Headrick went to the hospital to show Mr. Smith a photospread. When the detectives asked whether he could identify anyone in the pictures, Mr. Smith identified Mr. Kelley as the gunman, Mr. Gray as the man who pulled him back into the apartment and participated in beating him, and Mr. Backmon as someone he recognized from the neighborhood. Mr. Smith's injuries left him confined to a wheelchair, able to walk only very little.

The State charged Mr. Gray, as a prior and persistent offender, with assault in the first degree and armed criminal action. A jury convicted him on both counts. The court sentenced him to twelve years in prison for first degree assault and three years in prison on the armed criminal action charge, to be served concurrently.[2] Mr. Gray's convictions and sentences were affirmed on direct appeal in *State v. Gray*, 24 S.W.3d 204 (Mo.App.2000).

Mr. Gray subsequently filed a *pro se* Rule 29.15 motion for post-conviction relief, which was later amended by appointed counsel. In his amended motion, Mr. Gray alleged that his trial counsel was ineffective for, among other things, failing to take timely steps to obtain the clothing that he was wearing at the time of his arrest; failing to impeach Detective Sumpter and Mr. Smith with their inconsistent pre-trial statements; failing to cross-examine Detective Luster to show that Mr. Gray did not fit the description Mr. Smith gave of the assailant who participated in beating him; and failing to call Mr. Kelley and Mr. Kelley's mother and father to testify that Mr. Gray did not know or associate with Mr. Kelley. The court denied Mr. Gray's motion without an evidentiary hearing. Mr. Gray appeals.

## Standard of Review

In reviewing the denial of a motion for post-conviction relief, this court is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). Such a finding will be made if, after a review of the entire record, the appellate court "is left with the definite and firm impression that a mistake has been made." *Id.* To prevail on an ineffective assistance of counsel claim, a movant must establish that counsel's performance did not meet the same degree of skill, care, and diligence of a reasonably competent attorney and movant was thereby prejudiced. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." *Barnett v. State*, 103 S.W.3d 765, 768–69 (Mo. banc), *cert. denied*, —— U.S. —— 124 S.Ct. 172, 157 L.Ed.2d 114 (2003). " 'A reasonable probability is a probability sufficient to under-

---

**2.** Although, prior to submission of the case to the jury, the court adjudicated Mr. Gray to be a prior and persistent offender, the court did not state at sentencing or in its judgment that it sentenced him as a prior and persistent offender.

mine confidence in the outcome.'" *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

Unlike when reviewing other civil pleadings, "courts will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). Thus, an evidentiary hearing on a motion for post-conviction relief is required only if the movant satisfies three requirements: (1) the movant must plead facts, not conclusions, which, if true, would warrant relief; (2) the facts pled must not be refuted by the record; and (3) the movant must have been prejudiced. *Id.* at 822–23. "All three of these prongs must be present, otherwise the motion court may deny an evidentiary hearing." *Edwards v. State*, 954 S.W.2d 403, 408 (Mo.App. 1997).

### Allegations Insufficient on Claim of Failure to Retrieve Clothing

█ In his first point, Mr. Gray argues that he was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective for failing to retrieve his clothing from the correctional center. Mr. Gray alleged in his motion that he asked his trial counsel to obtain from the correctional center the clothing he was wearing on the date of the offense. He wanted the clothing examined to determine whether there was any sign of blood on it and to show that his clothing did not fit the description that Mr. Smith gave of the clothing worn by his assailants. Mr. Gray further alleged that his trial counsel said that she would send someone to pick up his clothing from the prison. Because his trial counsel's investigator did not pick up the clothing within ten days of Mr. Gray's arrival at the prison, however, the clothing

was donated to charity and could not be retrieved. Mr. Gray contended that the testimony of his trial counsel and her secretary and investigator would support his allegations. He attached memoranda from trial counsel's secretary and investigator detailing their inquiries to the prison regarding obtaining Mr. Gray's clothing.

The crux of Mr. Gray's claim is that his trial counsel was ineffective for not attempting to obtain his clothing within ten days of his arrival at the prison on December 3, 1997. Nowhere in his motion, however, does he allege that counsel was aware that she had only ten days to obtain his clothing, or that a reasonably competent attorney would have known of the ten-day deadline. The memo from trial counsel's secretary indicates that she called the prison on December 4, 1997, inquiring about picking up Mr. Gray's clothing. A prison official told her that he would have Mr. Gray sign a note saying that trial counsel's office could pick up his clothing "sometime next week." The memo does not indicate that she was ever told the clothing had to be picked up within ten days.

In the memo from trial counsel's investigator, he reported his attempt to retrieve Mr. Gray's clothing from the prison. He talked to the same prison official who had previously talked to the secretary, but the official had no recollection of his conversation with the secretary because he frequently received requests for property. The officer told the investigator that when Mr. Gray arrived at the prison, he was told he had three options for retrieving his property: pay for it to be sent home; designate a person to pick it up at the prison; or, after the expiration of ten days, allow it to be donated to the Salvation Army. Mr. Gray told the officer that someone named Keith Rainey would come get his property. Mr. Gray was advised that

Mr. Rainey had ten working days to pick it up. After ten days, when Mr. Rainey had not claimed Mr. Gray's property, the prison donated it.

While the memo indicates that Mr. Gray was aware of the ten-day deadline to pick up his clothing, there is nothing in the memo or in Mr. Gray's motion that indicates that he or anyone else communicated this information to his trial counsel or anyone in her office.[3] Nor does Mr. Gray allege that trial counsel should have known of the time deadline. The allegations in Mr. Gray's motion show that his trial counsel, without knowledge of the time deadline, took reasonable steps to obtain his clothing. It is a reasonable conclusion from the allegations of his motion that she was prevented from doing so by circumstances that, based on information known to his trial counsel, were beyond her control. Mr. Gray's motion does not allege sufficient facts showing that his trial counsel failed to meet the same degree of skill, care, and diligence of a reasonably competent attorney in a similar situation. The motion court did not clearly err in denying Mr. Gray's claim on this basis. Mr. Gray's first point is denied.

## Record Refuted Claims of Failure to Raise Inconsistencies

■ In his second point, Mr. Gray argues that his trial counsel was ineffective for failing to impeach Detective Sumpter and Mr. Smith with their inconsistent pre-trial statements about the details of the offense and to cross-examine Detective Luster about inconsistencies between Mr. Smith's description of Mr. Gray and Mr. Gray's actual appearance. Specifically, Mr. Gray argues that Detective Sumpter's trial testimony was inconsistent with Mr. Smith's deposition testimony concerning the length of time Detective Sumpter and Mr. Smith had worked together and their purpose for going to the drug house on the day of the incident. Mr. Gray further argues that Detective Sumpter's trial testimony was inconsistent with his deposition testimony, Mr. Smith's testimony, and Detective Gregory Pelter's statement concerning how many men answered the door when Mr. Smith arrived at the house and whether the men who answered the door came out and talked to Mr. Smith on the porch before going inside. Additionally, he argues that Detective Sumpter's description of what the three men he saw leaving the house after the shooting were wearing does not match what Mr. Gray was wearing when he was arrested. Finally, he argues that the description Mr. Smith gave to Detective Luster of the man who beat him does not match Mr. Gray's physical appearance after his arrest. Mr. Gray contends that pointing out these inconsistencies to the jury would have cast doubt on the veracity and accuracy of Detective Sumpter's and Mr. Smith's identification of Mr. Gray as one of the people who beat Mr. Smith.

■ Trial counsel's failure to impeach a witness does not, on its own, warrant post-conviction relief. *Barnum v. State*, 52 S.W.3d 604, 608 (Mo.App.2001). "The movant has the burden of establishing that the impeachment would have provided [the movant] with a defense or would have changed the outcome of the trial." *Id.* Mr. Gray alleged that Detective Sumpter testified that he and Mr. Smith had worked together a couple of months, while Mr. Smith testified they had worked together one week. Mr. Gray further alleged that Detective Sumpter had testified that their

---

**3.** Neither the motion nor the memo indicate that Mr. Rainey worked for trial counsel's office or that, even if he did, he was aware that Mr. Gray had designated him as the person who was to pick up Mr. Gray's property.

reason for going to the drug house the day of the incident was to introduce Detective Sumpter to drug dealers, while Mr. Smith testified it was to make a drug buy. These alleged inconsistencies were minor and immaterial. Emphasizing them at trial would not have aided in his misidentification defense, nor would it have changed the outcome of the trial.

As for the remaining inconsistencies in Detective Sumpter's testimony, the record demonstrates that trial counsel did, in fact, use them in an attempt to impeach Detective Sumpter. Mr. Gray's trial counsel cross-examined Detective Sumpter about his having stated in his police report that there were three, and not two, men who answered the door when Mr. Smith arrived, and she used the inconsistency to attack Detective Sumpter's credibility in her closing argument. Regarding Detective Sumpter's description of the clothing of the three men he saw exiting the building after the incident, he stated, in his deposition, that one of the three men was wearing a dark-colored sweater or sweatshirt. When Mr. Gray was arrested shortly after the incident, he was wearing a green sweatshirt. He was also wearing bib overalls with the flaps folded down, which Detective Sumpter failed to mention. In her closing argument, Mr. Gray's trial counsel specifically argued Detective Sumpter's failure to notice or mention the bib overalls as a reason to disbelieve the detective's identification of Mr. Gray.

■ Furthermore, contrary to Mr. Gray's assertion, his trial counsel raised the inconsistencies between Mr. Smith's description of the clothing and appearance of the assailant who participated in beating him and Mr. Gray's clothing and appearance. During her cross-examination of Mr. Smith, Mr. Gray's trial counsel questioned him about his describing the assailant who participated in beating him as a heavyset man who wore a white T-shirt and blue jeans. She also elicited from Detective Luster that Mr. Smith had given him this same description the day after the incident. Later, during her direct examination of Officer Thomas Clark, who was one of the arresting officers, she elicited that at the time of his arrest, Mr. Gray was wearing a green shirt, bib overalls with the front flap folded down, and a red cap. In her closing argument, Mr. Gray's trial counsel emphasized these inconsistencies and also pointed out to the jury that, unlike the assailant Mr. Smith described, Mr. Gray was not a heavy-set man. Although Mr. Gray claims that his trial counsel was ineffective for not also cross-examining Detective Luster about what Mr. Gray was wearing when he was arrested, there is no evidence in the record, nor is there any allegation in Mr. Gray's motion, that Detective Luster was aware of what Mr. Gray was wearing at the time of his arrest. Mr. Gray's claims, that his trial counsel was ineffective for not attempting to impeach Detective Sumpter and Mr. Smith with inconsistencies and for not pointing out inconsistencies between Mr. Smith's description and Mr. Gray's appearance, were refuted by the record. Mr. Gray's second point is denied.

### Hearing Warranted Only on Failure to Investigate and Call Arnett Kelley

■ In his third point, Mr. Gray argues that his trial counsel was ineffective for failing to investigate and call Mr. Kelley's father and mother, as well as Mr. Kelley himself, to testify for the defense. "To obtain a hearing based on counsel's failure to investigate, appellant must specifically identify who the witnesses were, what their testimony would have been, whether or not counsel was informed of their existence, and whether or not they were available to testify." *Morrow*, 21

S.W.3d at 823. To warrant a hearing on a claim that defense counsel was ineffective for failing to call a witness to testify, the movant must allege: "(1) that the witness could have been located through a reasonable investigation, (2) what the witness would have testified to if called, and (3) that the witness's testimony would have provided a viable defense." *White v. State*, 939 S.W.2d 887, 899 (Mo. banc 1997).

■ In his motion, Mr. Gray contended that Mr. Kelley's father, Albert Bradford, came to the trial and told Mr. Gray's trial counsel that he was willing to testify on behalf of Mr. Gray. Mr. Gray contended that, had Mr. Bradford been called as a witness, he would have testified that he does not know Mr. Gray, nor has he ever known his son to associate with Mr. Gray. Mr. Gray failed to allege any facts showing that Mr. Bradford knew all of the persons with whom his son associated, however. Therefore, Mr. Bradford's testimony would not have provided Mr. Gray with a viable defense, and the motion court properly denied his claim on this basis.

■ Similarly, Mr. Gray contended that Mr. Kelley's mother, Tracy Kelley, would have testified that she does not know Mr. Gray. Like his claim regarding Mr. Kelley's father, Mr. Gray failed to allege facts showing that Mr. Kelley's mother knew all of the persons with whom her son associated. Mr. Gray also claims that Ms. Kelley would have testified that after her son was arrested, he told her a person he did not know had been arrested with him. This testimony would have been hearsay, as it would have been offered to prove that Mr. Kelley did not know Mr. Gray. "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). "Coun-

sel is not ineffective for failing to offer inadmissible hearsay." *Skillicorn v. State*, 22 S.W.3d 678, 687 (Mo. banc 2000). The motion court did not clearly err in denying Mr. Gray's claim that his trial counsel was ineffective for failing to investigate and call Ms. Kelley.

■ Finally, Mr. Gray contends that his counsel was ineffective for failing to investigate and call Mr. Kelley. In his motion, Mr. Gray alleged that his trial counsel was aware that Mr. Smith had identified him and Mr. Kelley as his assailants. Mr. Gray also alleged that Mr. Kelley was incarcerated at the Jackson County Jail following his arrest for the assault on Mr. Smith and, like Mr. Gray, was represented by a public defender. Mr. Gray further alleged that Mr. Kelley would have testified that he did not know Mr. Gray, Mr. Gray was not involved in the assault on Mr. Smith and, indeed, Mr. Kelley acted alone in assaulting Mr. Smith.

Mr. Gray's allegations were sufficient to warrant a hearing on his claim that his trial counsel was ineffective for failing to investigate and call Mr. Kelley as a potential witness. Mr. Gray specifically identified Mr. Kelley and alleged facts indicating that his trial counsel was aware of Mr. Kelley's existence. Mr. Gray indicated that Mr. Kelley was available to testify and set forth what Mr. Kelley's testimony would have been. Mr. Kelley's testimony, if believed, would have significantly supported Mr. Gray's defense of misidentification, a viable defense under the circumstances of this case. Mr. Gray was entitled to a hearing on his claim that trial counsel was ineffective for failing to investigate and call Mr. Kelley as a witness. The motion court's judgment denying this claim is reversed, and the cause is remanded for an evidentiary hearing on this claim.

The judgment is affirmed, in part, and reversed and remanded, in part.

All concur.