STATE of Missouri, Respondent,

v.

Clinton P. PARKER, Appellant.

No. 27451.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 12, 2006.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Dora A. Fichter, Jefferson City, for respondent.

## ROBERT S. BARNEY, Judge.

Clinton P. Parker ("Appellant") appeals his convictions for statutory rape in the first degree, a violation of section 566.032, and statutory sodomy in the first degree, a violation of section 566.062.[1] Following a jury trial, Appellant was sentenced by the trial court as a prior offender, pursuant to section 558.016, to two concurrent terms of seventeen years in the Missouri Department of Corrections. On appeal, Appellant alleges two points of trial court error. In his first point on appeal, Appellant maintains the trial court erred in denying his amended motion for new trial based on newly discovered evidence. Appellant's second point on appeal asserts the trial court erred in allowing the jury to view a videotaped interview with the victim during its deliberations. We affirm the judgment of the trial court.

Appellant does not challenge the sufficiency of the evidence to support his convictions. "Viewing the evidence in the light most favorable to the jury's verdict," *State v. Smith*, 185 S.W.3d 747, 751 (Mo. App.2006), the record reveals that in May of 2004 C.B., who was six years old, was living with K.P. ("Mother"); D.D. ("Sister"); and Appellant.[2] One afternoon in early June of 2004, Sister was at home with C.B. when C.B. emerged from the bathroom and told her "that her pee-pee was bothering her." C.B. then told Sister that Appellant "had touched her private area" and that Appellant had "kissed [her] and went up her shirt and touched her." C.B. told Sister that Appellant had used "[h]is hand and his fingers and his tongue and his private area" to touch her and that it had happened on several occasions. Sister informed Mother and Mother asked C.B. about the incident. C.B. indicated to Mother that Appellant had touched her vaginal area with his hands. Mother then took C.B. to her family doctor, Dr. Vo, and the doctor contacted Family Services.

A forensic interview was performed by Dina Vitoux ("Ms. Vitoux") on C.B. at the Child Advocacy Center ("CAC") in July of 2004. The videotape of this interview was played for the jury during the trial.

C.B. testified at trial that Appellant touched her vaginal area on several occasions while they were alone together in Mother's bedroom. She testified that Appellant touched her with "his pee-pee" and his finger.

Appellant did not testify on his own behalf and presented no evidence at trial.

---

1. All rule references are to Missouri Court Rules (2005) and all statutory references are to RSMo (2000).

2. At the time of the incident in question, Mother was involved in a romantic relationship with Appellant; however, at the time of trial, she was married to Appellant's brother, S.P.

Additionally, we have chosen to refer to the victim and her family by initials in an effort to protect their privacy. This Court means no disrespect in so doing.

At the close of all the evidence, as detailed above, Appellant was convicted of statutory rape in the first degree and statutory sodomy in the first degree, and was sentenced to two, concurrent seventeen-year sentences. This appeal followed.

■ In his first point relied on, Appellant asserts the trial court plainly erred and abused its discretion in overruling his amended motion for new trial "because the ruling violated [Appellant's] due process right to present a defense...." He maintains such a ruling was in error in that he presented evidence "at the motion for new trial hearing ... that called into doubt [Appellant's] guilt of the charged offenses, in the form of [newly discovered] instant message records about coaching the child victim," and that such records were exculpatory in nature.

Appellant's first point on appeal is not preserved for our review in that his claim regarding newly discovered evidence was not presented to the trial court in a *timely* motion for new trial. Rather, his claim was first presented to the trial court in an amended motion for new trial filed on December 28, 2005, which was sixty-eight days after the entry of the verdict on October 21, 2005.[3]

■ Missouri statutes and rules do not provide a specific means for a criminal defendant to present claims of newly discovered evidence after the time to file a motion for new trial under Rule 29.11 has expired.[4] *Garner*, 976 S.W.2d at 60. Accordingly, as it was not timely filed, Appellant's amended motion for new trial preserves nothing for review, and, procedurally, is a nullity. *State v. Young*, 943 S.W.2d 794, 799 (Mo.App.1997). With that being said, courts of this State have "recognized that, in 'extraordinary' cases, [an appellate court may] remand the case as plain error pursuant to Rule 30.20 or [under] this [C]ourt's inherent powers so that the defendant can present his new evidence." *Garner*, 976 S.W.2d at 60; *see State v. Ramsey*, 874 S.W.2d 414, 417 (Mo.App.1994). The only extraordinary circumstance recognized in this State for such an action to be taken is "where the newly discovered evidence would have completely exonerated the defendant." *Garner*, 976 S.W.2d at 60; *see State v. Hill*, 884 S.W.2d 69, 76 (Mo.App.1994). Thus, our review, if any, of Appellant's claim in this point would be limited to plain error review under Rule 30.20.

■ Plain error review is used sparingly and is limited to those cases where

**3.** Rule 29.11(b) states that "[a] motion for a new trial ... shall be filed within fifteen days after the return of the verdict. On application of the defendant made within fifteen days after the return of the verdict and for good cause shown the court may extend the time for filing of such motions for one additional period not to exceed ten days."

Rule 29.11, governing the filing of motions for a new trial in criminal cases, does not make an exception extending the time to file a motion, even where the newly discovered evidence on which the motion for a new trial is predicated is not discovered until after the filing deadline has passed. The filing deadline of Rule 29.11(b) ... has been interpreted as being absolute such that once the deadline of fifteen or twenty-five days has passed, a motion may not be filed or amended even to allege, as a basis for a new trial, newly discovered evidence which was not discoverable until after the filing deadline had passed.
*State v. Stephens*, 88 S.W.3d 876, 880 (Mo.App.2002).

**4.** The only formally authorized means by which a defendant with an untimely motion for new trial based on newly discovered evidence may present new claims is to seek relief by application to the governor for executive clemency or pardon pursuant to the Missouri Constitution. *State v. Garner*, 976 S.W.2d 57, 60 (Mo.App.1998); *State v. Gray*, 24 S.W.3d 204, 208–09 (Mo.App.2000).

there is a clear demonstration of manifest injustice or miscarriage of justice. *State v. Ballard,* 6 S.W.3d 210, 214 (Mo.App.1999). Claims of plain error are reviewed "under a two-prong standard." *State v. Roper,* 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.' " *Id.* (quoting *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Roper,* 136 S.W.3d at 900. "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Id.* "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

 The question of whether to grant a motion for new trial is left to the sound discretion of the trial court. *State v. Mayes,* 63 S.W.3d 615, 625 (Mo. banc 2001). The trial court abuses its discretion when its ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Christeson,* 50 S.W.3d 251, 261 (Mo. banc 2001).

Thus, in the context of plain error review, we will reverse the trial court's denial of a defendant's motion for new trial only if we determine that its ruling was an obvious and clear abuse of discretion, which affected a substantial right of the defendant and resulted in a manifest injustice or miscarriage of justice.

*State v. Smith,* 181 S.W.3d 634, 638 (Mo. App.2006). "It is completely in this [C]ourt's discretion to determine if a defendant with an untimely filed motion for a new trial based on newly discovered evidence should be allowed a new trial." *State v. Clark,* 112 S.W.3d 95, 99 (Mo.App. 2003). New trials based on newly discovered evidence are disfavored.[5] *Gray,* 24 S.W.3d at 209.

To warrant a new trial based on newly discovered evidence, the defendant must show that: (1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that the evidence was not discovered sooner; (3) the evidence is so material that it would probably produce a different result on a new trial; and (4) the evidence is not cumulative only or

---

5. In fact, we note that the court in *Gray* pointed out that "there appear to be only three cases in Missouri that have held that claims may be raised for the first time after untimely filing a motion for new trial." *Gray,* 24 S.W.3d at 209. Two of those cases, *State v. Mooney,* 670 S.W.2d 510 (Mo.App.1984), and *State v. Williams,* 673 S.W.2d 847 (Mo. App.1984), contained extraordinary circumstances which would have exonerated the defendant. In *Mooney,* the newly discovered evidence necessitating remand was that after conviction and sentence "one of the defendant's alibi witnesses tape-recorded a conversation with the victim in which the victim admitted his testimony was false and that he made up the entire incident." *Gray,* 24 S.W.3d at 209. "In *Williams,* both the prosecuting attorney and the Attorney General filed affidavits in the Court of Appeals agreeing that jurisdiction should be returned to the trial court to hold a hearing on the defendant's motion for new trial based on newly discovered evidence;" accordingly, "the court overlooked the time constraints and remanded the case to the trial court." *Id.* The only other case which allowed remand after an untimely motion for new trial, *State v. Post,* 804 S.W.2d 862 (Mo.App.1991), "was remanded on the basis of jury misconduct, not 'newly-discovered evidence.' " *Gray,* 24 S.W.3d at 209.

merely impeaching the credibility of a witness.

*Smith,* 181 S.W.3d at 638.

 In the present matter, Appellant asserted in his amended motion for new trial that "newly discovered evidence" had been obtained relating to his convictions for statutory sodomy and statutory rape. Specifically, Appellant maintained he had obtained "a copy of an electronic internet discussion believed to be between Mother and one of [Appellant's] sisters."[6] His motion stated that "[w]hile most of the dialog addresses simple opinion of the two ladies concerning [Appellant], there is a simple statement regarding possible evidence that [C.B.'s] older sister, [D.D.], rehearsed [C.B.] prior to her presentation of facts declared in her video taped [CAC] meeting."

At a December 28, 2005, hearing relating to the amended motion for new trial, defense counsel raised his concerns to the trial court about "allegations" within this instant messaging discussion that D.D. had coached C.B. prior to her CAC interview. Defense counsel stated that in the discussion between Mother and "c_parker_63080" the allegation of coaching was made by "c_parker_63080" and "[M]other doesn't even refute that but simply moves on to a different topic." Defense counsel requested that even if the trial court would not grant a new trial, it should allow C.B. and D.D. to be subpoenaed for a hearing to determine if D.D. had, in fact, coached C.B. prior to her CAC interview.

The following are the applicable verbatim passages from the instant messaging transcript which was attached to Appellant's amended motion for new trial:

c_parker_63080: so why you try to help [Appellant], think he didn't do it,, since your kid had to be drilled about what happened the night before you and [S.P.] took her to make the video?

c_parker_63080: [S.P.] is the reason this all happened

Mother: no its not

\* \* \*

c_parker_63080: [D.D.] is the reason not [S.P.],, is what you think,,, [D.D.] did it to get [Appellant] out of your and [S.P.'s] way

Mother: she is the 1 that brought all this up . . . .

c_parker_63080: and you and [S.P.] not only let her but encouraged it

Mother: no we didn't

Mother: u can think whatever ur going to anyway

\* \* \*

Mother: [C.B.] says its true

\* \* \*

c_parker_63080: after you letting [D.D.] threaten her with her going into a home she would say anything

Mother: i know and im sorry for that but till [C.B.] tells me different i don't know what to do

c_parker_63080: how the f—— you sit there and let [D.D.] threaten your kid

---

**6.** Apparently the "electronic internet discussion" was provided to the State in mid-December of 2005 by a child advocate "relating to legal process of another case unrelated to [Appellant]." The State then provided defense counsel with copies of the discussion. We note there are no allegations that this transcript was not disclosed in a timely manner.

Additionally, we note that one of the parties involved in the instant messaging discussion was almost certainly Mother. While the other party, "c_parker_63080," is identified in Appellant's motion as being Appellant's sister, there is nothing in the record to prove that assertion.

with going into a foster home if she don't get her story right

* * *

Mother: i don't know [D.D.] done that

Following argument from both sides, the trial court ruled that the instant messaging transcripts "contain allegations and opinions." The trial court also went on to state that C.B. had already testified at trial and any issues relating to her being coached prior to her CAC interview could have been addressed at that time. The trial court then overruled Appellant's amended motion for new trial.

 Here, in order to prove he was entitled to a new trial, Appellant was required to show that the newly discovered evidence "is not ... merely impeaching the credibility of the witness."[7] *Smith,* 181 S.W.3d at 638. The determination of the credibility of witnesses has long been the province of the jury. *State v. Pond,* 131 S.W.3d 792, 794 (Mo. banc 2004). Further, "a lay person may not give an opinion when 'it has the effect of answering the ultimate issue the jury is to determine.'" *Shockley v. State,* 147 S.W.3d 189, 194 (Mo.App.2004) (quoting *State v. Cason,* 596 S.W.2d 436, 440 (Mo.1980)).

We agree with the trial court's finding that the instant message transcript contains only "allegations and opinions" by a lay person. The instant messages in the present matter were not evidence that D.D. in fact coached C.B. prior to her CAC interview. Instead, the messages were simply unsubstantiated allegations based on Appellant's relative's opinion as to C.B. and D.D.'s credibility. This purported impeachment evidence is not sufficient to warrant the granting of a new trial in that

it does not completely exonerate Appellant of his crimes. *Gatewood,* 965 S.W.2d at 858; *Westcott,* 857 S.W.2d at 398. Accordingly, Appellant is not entitled to a new trial based on newly discovered evidence. The newly discovered evidence presented does not rise to the level such that relief under Rule 30.20 is authorized. Appellant's first point on appeal is denied.

 In his second point relied on, Appellant asserts the trial court plainly erred and abused its discretion "in sending State's Exhibit 1, the [CAC] tape, to the jury during its deliberations, over [A]ppellant's objections...." Appellant maintains this action by the trial court was in error because the videotape "was testimonial in nature, which resulted in [C.B.'s] testimony being unduly bolstered and emphasized, allowing the jury to give it undue weight."

In the present matter, the videotape of C.B.'s interview at the CAC with Ms. Vitoux was admitted into evidence and played for the jury during the State's direct examination of Ms. Vitoux. During the videotaped interview, C.B. had told Ms. Vitoux that Appellant had touched both inside and outside of her "privates" with his hand and with his own "privates."

During the jury's deliberations, the jury requested to view the videotape again. Defense counsel objected on the grounds that "[i]t is testimony basically in nature." The trial court overruled the objection, brought the jury back into the courtroom, and allowed them to again view the tape "in its entirety...."

 Appellant again requests plain error review in that this issue was not included in his motion for new trial. Save for exceptions not applicable here, allega-

---

7. "Impeachment evidence is evidence which challenges a witness's credibility." *State v. Gatewood,* 965 S.W.2d 852, 858 (Mo.App. 1998); *see State v. Westcott,* 857 S.W.2d 393, 398 (Mo.App.1993) (holding that "[i]f the only usefulness of newly-found evidence is to impeach, the motion for remand must be denied").

tions of error in a jury-tried case must be included in a motion for new trial to be preserved for appellate review. Rule 29.11(d); *see also State v. Monath,* 42 S.W.3d 644, 651 (Mo.App.2001). A claim of error not raised in a motion for new trial is not preserved for our review. *State v. Pennington,* 24 S.W.3d 185, 188 (Mo.App.2000). Thus, our review of Appellant's claim, if any, would be limited to plain error review under Rule 30.20. As the standard for plain error review is set forth in Point I above, we shall not repeat it here.

▬▬▬ The trial court has the discretion to decide whether to allow exhibits to be taken into the jury room during deliberation. *Smith,* 185 S.W.3d at 754. This discretion is abused only when allowing an exhibit to go to the jury was " 'untenable and clearly against reason, and [works] an injustice.' " *State v. Sullivan,* 925 S.W.2d 483, 485 (Mo.App.1996) (quoting *State v. Jennings,* 815 S.W.2d 434, 440 (Mo.App. 1991)). " 'An objecting party has the bur-

den of showing the prejudicial result of sending exhibits to the jury.' " *State v. Smith,* 90 S.W.3d 132, 142 (Mo.App.2002) (quoting *Sullivan,* 925 S.W.2d at 485).

▬▬▬ The broad "general rule is that exhibits that are testimonial in nature cannot be given to the jury during its deliberation." *State v. Evans,* 639 S.W.2d 792, 795 (Mo. banc 1982); *see also O'Neal v. Pipes Enterprises, Inc.,* 930 S.W.2d 416, 421 (Mo.App.1995).[8] However, it is our view that the videotape at issue does not fall within this bar.[9]

The present matter is factually more akin to *Skipper,* 101 S.W.3d at 353, than those cases cited by Appellant. In *Skipper,* the defendant complained that the trial court erred in admitting the videotaped recording of a social worker's interview with the child victim. *Id.* at 352–53. The *Skipper* defendant maintained the trial court erred "in admitting the videotaped recording of the interview because 'both the videotape and [the social worker's] tes-

---

8. "The reason often given for th[is] rule is that testimonial exhibits tend to unduly emphasize some of the testimony, thus raising the possibility the jury would give it undue weight." *State v. Reed,* 21 S.W.3d 44, 46 (Mo.App.2000).

We recognize that there is an exception to this general rule which allows for giving "written or recorded confessions in criminal cases . . ." to a jury during deliberations "apparently on the theory that their centrality to the case warrants it." *Evans,* 639 S.W.2d at 795.

9. This Court is cognizant of the holding in *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987). In *Seever,* the defendant was charged with sexual abuse in the first degree of an eight-year-old female victim. *Id.* at 439. At trial, the State introduced into evidence a videotaped interview between the child victim and a police officer per section 492.304, RSMo 1986, and then called the child to testify, "where she gave testimony covering all the elements of the case." *Id.* at 441. The *Seever* defendant argued on appeal that "this procedure resulted in an improper enhance-

ment and rehabilitation." *Id.* The *Seever* court agreed with the defendant and found that "[w]hen a witness testifies from the stand, the use of duplicating and corroborative extrajudicial statements is substantially restricted." *Id.*

We note that *Seever* was decided under a previous version of section 492.304 and that particular statutory section has undergone significant changes since the court's rendition of its opinion. *See State v. Skipper,* 101 S.W.3d 350, 353 (Mo.App.2003). As set out by the Supreme Court of Missouri in *State v. Silvey,* 894 S.W.2d 662, 672 (Mo. banc 1995), the court in *Seever* found that bolstering in that case was improper "because it effectively allowed the witness to testify twice." As explained in *Silvey,* "[s]ection 492.304 allows for the preparation of a videotape in a child sexual abuse case as a *quasi-deposition* to relate the child's testimony." *Id.* (Emphasis added). "What *Seever* prohibits is the use of such a videotape *to wholly duplicate the live testimony of the child witness.*" *Id.* (Emphasis added.)

timony duplicated and bolstered the trial testimony of [the child victim] so that the jury heard the victim's testimony three times.'" *Id.* at 352. The *Skipper* court found that because "'[a] child victim's out-of-court statements to third parties possess unique strengths and weaknesses and are distinct evidence from the child victim's trial testimony,'" *Id.* at 353 (quoting *State v. Gollaher,* 905 S.W.2d 542, 545 (Mo.App.1995)), the *Skipper* victim's videotaped statement made to the social worker was "distinct and not a duplicate of [the victim's] trial testimony." *Id.* at 354. Further, the court found that such videotaped statements "do not improperly bolster a victim's live testimony where they are informal and not planned as a substitute for the victim's testimony. Such statements, taken as a whole, do not have the effect of allowing the victim to testify twice." *Skipper,* 101 S.W.3d at 353–54 (quoting *Gollaher,* 905 S.W.2d at 545) (internal citations omitted).

In the instant case, C.B. testified; Ms. Vitoux testified; and the videotape of the forensic interview was played for the jury during trial. Being a quasi-deposition, the videotaped interview was "distinct" and not duplicative of C.B.'s testimony at trial. *Skipper,* 101 S.W.3d at 354. Here, the instant videotaped interview cannot be considered testimonial evidence such that it was prohibited from being viewed by the jury during its deliberations. The trial court took steps to ensure that the videotape was not given undue repetition by controlling the jury's exposure to the videotape; the jury viewed it in the courtroom; and the tape was played only one time for the jury. We find no trial court error or abuse of trial court discretion in permitting the jury to view the videotape in question under these given circumstances. *See Skipper,* 101 S.W.3d at 354.

Appellant has failed to prove there was a clear demonstration of manifest injustice or miscarriage of justice in this matter such that he is entitled to plain error review. *Ballard,* 6 S.W.3d at 214. Point II is denied.

We affirm the judgment of the trial court.

GARRISON, J., and BATES, C.J., concur.