STATE of Missouri, Respondent,

v.

Jackie HILL, Appellant.

No. 28335.

Missouri Court of Appeals,
Southern District.

May 5, 2008.

Craig A. Johnston, attorney for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger W. Johnson, attorneys for respondent.

DANIEL E. SCOTT, Judge.

Defendant Jackie Hill appeals her conviction for the Class A felony of child abuse. She does not challenge the sufficiency of the evidence, which we summarize in the light most favorable to the verdict. *State v. Woodmansee*, 203 S.W.3d 287, 289 (Mo.App.2006).

## Facts and Background

Deputy Steven Combs got an emergency call that a child had fallen down stairs and was non-responsive. He was dispatched to a rural home where Defendant lived with her husband Joe, her four children—including the two-year-old victim ("Child")—and other family members. He arrived to find Joe Hill calling 911 and holding Child, who was having a seizure. Deputy Combs laid Child on a table and immobilized him to avoid further injury. He saw head trauma and bruises elsewhere on Child's body, but no redness or scrapes as from a fall down stairs. Paramedics arriving two minutes later also noticed Child's bruises in various stages of healing.

Joe Hill claimed Child's five-year-old brother pushed Child down the home's carpeted stairway while Mr. Hill was asleep. Defendant thereafter arrived in her vehicle, crying "My baby, my baby!" She also blamed Child's brother for pushing him down the stairs, and said this was not the first time he had done so.

Child died after being life-flighted to a Springfield hospital. Besides fresh and old bruises to Child's head, back, buttocks, and leg, an autopsy showed a large subdural hematoma;[1] shear hemorrhaging;[2] and bleeding inside the eyes. From these symptoms of shaking, the pathologist determined that Child died from blunt head trauma consistent with shaken impact syndrome.

For several days, Defendant and Joe Hill told similar stories. They claimed Defendant awakened Joe around noon. The kids were eating. Defendant went shopping, returned home, and saw the ambulance. Child had no bruises when Defendant left.

Defendant changed her story five days later during a police interview. She started to cry and said she was sorry that it happened. She said the children got into some things; she lost her temper, grabbed Child, and began spanking and taking him to a corner. She swung him around and his head hit a door. She started shaking Child and saying to "look her in the eye." She denied trying to hurt him and said she "just lost it." She later gave a videotaped statement to the same effect, and expressly denied being coerced, threatened, or influenced by drugs or alcohol in making that statement.

At trial, Defendant went back to her original story—she was shopping when Child was hurt and had nothing to do with it. She testified that she did not shake or hit Child, or see anyone else do so, or see Child hurt himself. She denied pushing Child into a door or other object, or causing his head and face bruises, or knowing how those bruises occurred. Initially, she said she did not recall her videotaped interview or what she said that day, claiming

she had taken four Xanax previously. Later, she said she lied on tape because "Sergeant Knowels promised he'd give me my other children back if I said what he wanted me to say."

The jury found Defendant guilty and recommended a life sentence, which the trial court imposed. Defendant's appeal raises three points.

## Point I—Autopsy Photo

■ Defendant claims an autopsy photo graphically depicting Child's subdural hematoma was unduly prejudicial.

■ The trial court's broad discretion to admit photographs is abused only by a ruling so arbitrary, unreasonable, and clearly against the logic and circumstances that it shocks the sense of justice and indicates a lack of careful consideration. *State v. Davis*, 107 S.W.3d 410, 422 (Mo. App.2003). We review for prejudice, not mere error, and will reverse only for error that deprived the defendant of a fair trial. *State v. Norman*, 243 S.W.3d 466, 471 (Mo.App.2007).

Defendant argues the State had no legitimate reason to introduce and display the challenged photo, but did so solely to arouse the jury's emotion. Although irrelevant evidence should not be admitted solely to inflame the jury, we do not find that situation. Defendant consistently sought to undermine juror confidence in medical evidence that Child died of shaken impact syndrome consistent with Defendant's videotaped admissions. Defense counsel suggested Deputy Combs and the paramedics aggravated Child's injuries. They questioned the procedure, findings, and opinions of both the original patholo-

---

1. Bleeding inside the skull and outside of the brain.

2. Between the brain's gray and white matter.

gist and the pathologist at trial.[3] Defense counsel particularly noted there were no photos of retinal bleeding, which coupled with the hematoma, was central to the conclusion that Child had been shaken. The testifying pathologist used the challenged photo to illustrate the hematoma and support the original pathologist's findings.

A photograph is relevant if it shows the nature and extent of wounds or the cause of death, or tends to prove an element of the crime, or assists the jury in understanding testimony. *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998). Since the challenged photo was so used, it was not necessary to exclude it as inflammatory, (Id.) or because other evidence described what was shown. *State v. Schneider*, 736 S.W.2d 392, 403 (Mo. banc 1987); *State v. Clements*, 849 S.W.2d 640, 643 (Mo.App.1993). *See also State v. Christeson*, 50 S.W.3d 251, 266 (Mo. banc 2001); *State v. Rhodes*, 988 S.W.2d 521, 524 (Mo. banc 1999); *State v. Hawkins*, 58 S.W.3d 12, 24–25 (Mo.App.2001). We deny Point I.

### Point II—Hearsay Letter

■ The defense offered a letter Joe Hill mailed to Defendant in jail. When the State objected as hearsay, defense counsel claimed it contained admissions against Joe Hill's penal interests and thereby was admissible. The trial court refused to admit the letter.

■ Defendant now invokes the curative admissibility doctrine. She claims the letter, although hearsay, was admissible to respond to hearsay evidence previously offered by the State. This assertion differs from her argument at trial and in her new trial motion. A defendant may not claim

error on an evidentiary issue on a theory not presented to or decided by the trial court. *State v. Johnson*, 955 S.W.2d 786, 788 (Mo.App.1997).

■ Moreover, curative admissibility lies only to combat an opponent's introduction of inadmissible evidence. *State v. Mozee*, 112 S.W.3d 102, 109 (Mo.App.2003). Although Defendant complains that the State "consistently and repeatedly" introduced Joe Hill's "hearsay statements" (statements which, if true, would have exonerated Defendant), those were not offered to prove their truth (and thereby Defendant's innocence). Thus, they were not inadmissible hearsay. *State v. Tyra*, 153 S.W.3d 341, 346 (Mo.App.2005). Accordingly, they did not trigger curative admissibility. *See Mozee*, 112 S.W.3d at 109.

■ Curative admissibility also is limited to evidence that rebuts or explains negative inferences from an opponent's inadmissible evidence. *Id.* Defendant identifies no negative inference to rebut or explain. She simply claims Joe Hill's statements "opened the door for other statements to be admitted" as a matter of fundamental fairness. Since Defendant otherwise concedes the letter was inadmissible hearsay, the trial court did not err in excluding it. Point II fails.

### Point III—Newly Discovered Evidence

■ Point III mirrors Defendant's separate motion, which we have taken with the case, seeking a remand to hear newly-discovered evidence. During this appeal, a Dr. Gilbert sent Defendant's appellate counsel this June 2007 letter:

I am a Child and Adolescent Psychiatrist and am treating J——,[4] son of one of

---

**3.** The pathologist who performed the autopsy died before trial.

**4.** We decline to identify J—— by name.

your clients, Jackie Hill. I have been treating J— since October 23, 2006. J— reports that his siblings were playing tag and he seen his 3 year-old sibling push the 2–year old sibling down the steps. I do feel this is true. He was 5 years-old at the time. He was at the age where you could rely on his testimony.

If you need any further information, please feel free to contact me at the above number.

■ There is no specific procedure for presenting claims of newly discovered evidence on appeal. *State v. Parker*, 208 S.W.3d 331, 334 (Mo.App.2006). Our appellate courts have inherent power to remand a case to avoid a miscarriage of justice or manifest injustice in light of newly-discovered evidence. *State v. Dorsey*, 156 S.W.3d 791, 798 (Mo.App.2005). Yet this is disfavored; completely discretionary; may have happened only twice;[5] and is strictly limited to extraordinary cases where newly-discovered evidence completely exonerates the defendant. *Parker*, 208 S.W.3d at 334; *Dorsey*, 156 S.W.3d at 798; *Gray*, 24 S.W.3d at 209.

Defendant claims "the admission of evidence concerning what J— told Dr. Gilbert" would likely produce a different trial result. We are not so persuaded, nor convinced this evidence is admissible. The letter is hearsay. Even if the doctor testified personally, what J— told him remains hearsay. The doctor's "feeling" about J—'s veracity also is inadmissible, since Missouri strictly prohibits expert evidence on witness credibility. *State v. Foster*, 244 S.W.3d 800, 802 (Mo.App.2008); *State v. Williams*, 858 S.W.2d 796, 800 (Mo.App.1993). Defendant posits no hearsay exception or other basis to admit such evidence.[6] We deny Point III and Defendant's motion to remand, and affirm the judgment.

PARRISH, P.J., and BATES, J., concur.

---

**5.** *Parker* (208 S.W.3d at 335 n. 5) and *State v. Gray*, 24 S.W.3d 204, 209 (Mo.App.2000) cite as the only such cases *State v. Mooney*, 670 S.W.2d 510 (Mo.App.1984) and *State v. Williams*, 673 S.W.2d 847 (Mo.App.1984).

**6.** We focus on Dr. Gilbert because Defendant does not allege that J— would testify; nor

proffer (except via Dr. Gilbert's letter) what J— might say; nor explain why J—'s purported observations could not have been discovered through due diligence before trial. *See, e.g., State v. Ryan*, 229 S.W.3d 281, 288 (Mo.App.2007)