STATE of Missouri, Respondent,

v.

**Benjamin HARDY, Appellant.**

**No. SD 29390.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 21, 2009.

Ellen H. Flottman, Columbia, for Appellant.

Chris Koster, Atty. Gen., and Mary H. Moore, Jefferson City, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Benjamin Hardy was convicted of first-degree murder and armed criminal action. He claims his post-arrest comment to a highway patrol sergeant—"sounds like I'm pretty much f*cked"—should not have been admitted at trial.

### Facts and Background

Hardy does not challenge the sufficiency of the evidence, which we must view favor-

ably to the verdicts. *State v. Hill,* 250 S.W.3d 855, 856 (Mo.App.2008). Summarized accordingly, the record shows that Hardy planned to and did kill his victim with a point-blank, full-face shotgun blast.

In the ten days before the killing, Hardy bought the murder weapon in the name of his girlfriend, Christine Watkins;[1] had his friend saw off the barrel; and practiced with it in his shop. The night of July 1, Hardy put on dark clothing, a dark cap, and latex gloves. He and Watkins drove from Rolla to St. James, searched for the victim, and found him at their third stop. From less than 12 inches—so close that shell wadding was recovered from the victim's head at autopsy—Hardy shot him in the face with 00 buckshot,[2] severing his spinal cord. Hardy told the victim, "now it's over, Jim," and fled with Watkins back to Rolla. They wiped down and hid the car, spent the night at a motel, and moved to St. Louis the next day.

Watkins returned three months later. Now afraid of Hardy, she told the authorities everything. Based on her leads, officers confirmed Hardy's purchase of the murder weapon; located the friend who sawed off the shotgun; recovered a spent shell from Hardy's shop; and matched its ballistics to the murder weapon. She also led police to Hardy's car which, like his murder-night attire, fit descriptions from persons whom Hardy encountered as he hunted the victim.

Charges were filed, a warrant was issued, and Hardy was arrested in St. Louis, where Sergeant Folsom of the Highway Patrol interviewed him. The sergeant informed Hardy that Watkins had come clean; described the evidence that police had developed; then read Hardy his Miranda[3] rights and asked if he understood them. Hardy answered, "sounds like I'm pretty much f*cked. I think I'd better get a lawyer." Sergeant Folsom then terminated the interview.

Hardy filed a pre-trial motion to suppress his statements. The trial court held an evidentiary hearing and ruled that "sounds like I'm pretty much f*cked" could be admitted, but "I think I'd better get a lawyer" could not.[4] Over Hardy's continuing objection, Sergeant Folsom testified accordingly at trial.[5]

## Analysis

■ Hardy claims his post-arrest comments should not have been separated, and that "sounds like I'm pretty much f*cked" was as much an invocation of his right to counsel as "I think I'd better get a lawyer." Although not mentioned in his brief, he seems to rely on the proposition that an assertion of Miranda rights cannot be used as evidence. *See Doyle v. Ohio,* 426 U.S.

---

1. Hardy used his own credit card, however, to pay for the gun.

2. Essentially firing nine .32 caliber shots via one trigger pull, according to police testimony.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. This ruling was consistent with our guidance in *State v. Brown,* 670 S.W.2d 140 (Mo. App.1984), which found error in the admission of a defendant's statement that he "f*cked up" and "was on parole." *Id.* at 141. We noted that the statement "could have been

shown without reference to parole without diluting what the state wished to show," and its substance could have been admitted without mentioning parole. *Id.* at 142.

5. The state's evidence was presented through thirteen witnesses over four days of trial. The defense called one witness for brief and arguably inconsequential testimony. Hardy chose not to testify, having taken into consideration "all of [his] prior convictions" and "some of [his] prior bad acts that have not been introduced into evidence."

610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), *cited in Neely v. State,* 117 S.W.3d 731, 737 (Mo.App.2003); *State v. Dexter,* 954 S.W.2d 332, 337–38 (Mo. banc 1997).

The parties have cited several cases, all too distinguishable to be persuasive. More to the point is *State v. Stewart,* 542 S.W.2d 533 (Mo.App.1976). Stewart was arrested for marijuana possession, transported to jail, and informed of his Miranda rights. At trial, an officer related their brief conversation:

> After I asked him if he knew why he was in jail, he stated, 'Yes, for possession of marihuana.' I asked if he'd been advised of his rights under Miranda. He stated he had and signed the papers. He understood them. I asked if he wanted to go upstairs and talk to me in regard to the situation. *He stated, 'No, it was just some old, homegrown stuff.' And he didn't wish to talk to me.*

*Id.* at 536 (emphasis ours). This court found the italicized comment admissible, including the reference to "homegrown stuff," rejecting Stewart's claim that "he was merely expressing his desire not to talk and to remain silent." *Id.* at 537.

Here the defendant did not remain silent, but made oral answers to Detective Smith's questions, a part of which was incriminating, i.e., 'it was just some old, homegrown stuff.' This was volunteered in conjunction with his indication that he didn't desire to talk. Clearly the reference to 'homegrown stuff' was incriminating and constituted an admission against interest. The defendant was fully advised of his rights prior to the questioning by Smith and admitted that he had been so advised and understood those rights. There is no showing or claim by the defendant that he was tricked or coerced into making the admission. A voluntary statement or admission by an accused while under arrest and after being fully advised of his rights is admissible, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Gregg v. State,* 446 S.W.2d 630, 632 [1, 2] (Mo.1969), and being a voluntary admission against interest, it was properly admitted in evidence.

*Id.*

The same is true here. Hardy did not choose to remain silent after his Miranda warnings. He made an incriminating statement instead, then he raised the issue of counsel. A statement followed by a claim of privilege does not render the statement inadmissible. *See State v. Sproling,* 752 S.W.2d 884, 889 (Mo.App.1988)(citing *State v. Laws,* 661 S.W.2d 526, 529 (Mo. banc 1983)). Since the record shows that Hardy was informed of and understood his Miranda rights, and thereafter made a voluntary statement, " 'it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent.' "[6] *State v. Walton,* 899 S.W.2d 915, 920 (Mo.App.1995)(quoting *State v. Schnick,* 819 S.W.2d 330, 336 (Mo. banc 1991)).

Moreover, "sounds like I'm pretty much f*cked" has no legal significance vis-à-vis Miranda. If an accused says, "I killed the victim, now I'd like an attorney," the Miranda/Doyle rationale[7] is not advanced by

---

**6.** Silence in the Miranda context is not limited to muteness, but includes an accused's expression of "a desire to remain silent until an attorney has been consulted." *Dexter,* 954 S.W.2d at 337–38 (quoting *Wainwright v.* *Greenfield,* 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986)).

**7.** " '*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used

suppressing his volunteered confession just because he tacked a mention of counsel onto the end. We affirm the judgment and convictions.

RAHMEYER, J. and LYNCH, P.J., CONCUR.

against him.... *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.' " *Wainwright*, 474 U.S. at 291, 106 S.Ct. 634 (quoting *Anderson v. Charles*, 447 U.S. 404, 407–08, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980)).