**STATE of Missouri, Respondent,**

v.

**Michael PARTAIN,
Defendant/Appellant.**

**No. ED 91872.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 18, 2010.

Matthew Ward, Columbia, MO, for appellant.

Chris Koster, John M. Reeves, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

*Introduction*

Michael Partain (Defendant) appeals from the trial court's judgment entered upon a jury verdict convicting him of child molestation in the first degree, in violation of Section 566.067 RSMo 2000. We affirm.

*Factual and Procedural Background*

Defendant does not challenge the sufficiency of the evidence to support his conviction. As pertinent to Defendant's point on appeal, the evidence, viewed in the light most favorable to the verdict, reveals as follows.

Victim A.K. was fifteen years old when she testified during Defendant's trial. During her fourth grade year, A.K., then about eleven years old, and her family temporarily lived with her maternal grandmother and step-grandfather in Jefferson County, Missouri. A.K. and her siblings slept in the basement of her grandparents' house. Defendant is her step-grandfather's brother; A.K. had not met him before she and her family moved in with her grandmother. Although Defendant, an over-the-road truck driver, did not live with A.K.'s grandparents, he would occasionally stay overnight at their house, sleeping either in the guest room or on a pull-out couch in the living room.

Once, when A.K. was sleeping in a bunk bed in the basement with her siblings, Defendant shook her shoulder, whispering as he told her to wake up. A.K. was wearing a big tee shirt and underwear. Defendant put his hand in A.K.'s underwear, touching and rubbing A.K.'s vagina. As he left A.K., Defendant told her not to tell anyone about what had happened. A.K. did not tell anyone because Defendant told her that he would hurt her or her siblings.

One night, after using the bathroom, A.K. had to walk through her grandparents' living room where Defendant was sleeping on the pull-out couch. Defendant pulled her into the bed with him. Defendant let A.K. get out of the bed and leave when she told him that she had to get up early and go to school the next day. Again, A.K. did not tell anyone about this incident because she was scared.

About three years later, A.K.'s mother asked A.K. about Defendant, after A.K.'s little sister told her mother that Defendant made her feel creepy. When A.K. heard that her little sister had already talked to her mother about Defendant, A.K. thought it would be okay to tell her mother about Defendant's touching incidents. A.K. was really upset, and felt embarrassed and ashamed that she had not told her mother earlier.

After A.K.'s mother learned what Defendant had done, she took A.K. and her sisters to the police station and filed a report. A.K.'s mother then took the girls to the Child Advocacy Center (CAC), where A.K. talked to an interviewer about the incidents. A.K. told the interviewer more about the incidents than what she had told her mother. A.K. did not want to tell her mother everything that had happened because A.K. did not want to make her mother more upset than she already was.

The CAC interviewer videotaped her interview with A.K. When the interviewer asked A.K. if she knew why she was at the CAC, A.K. responded that she was there to talk about Defendant. A.K. told the interviewer that Defendant "had put his

hands down her pants." Thereafter, A.K. described the bedroom incident when Defendant touched her vagina under her underwear. A.K. also told the interviewer about the incident where Defendant made her lie next to him on the pull-out couch and hugged her beside him. The CAC interviewer noted that A.K. appeared very upset, concerned and embarrassed when she was describing the incidents.

The videotaped CAC interview was received into evidence as State's Exhibit 2 for viewing by the jury. Although Defendant objected to the videotape as hearsay during a pretrial admissibility motion hearing, Defendant stated, "No objection," when the State indicated its intent to play the videotape during trial. The videotape was shown to the jury.

After retiring for its deliberations, the jury requested to view two exhibits, including State's Exhibit 2. When the trial court suggested that the jury be brought back to the courtroom to view Exhibit 2, Defendant said, "I have no problem with that, Judge." The trial court brought the jury back to the courtroom to view the videotape, and later sent the other exhibit, a schematic drawing of the house where A.K. and her family lived with her grandparents, back to the jury room.

The jury found Defendant guilty of child molestation in the first degree. Defendant did not challenge the jury's viewing of the videotape in his motion for new trial. This appeal follows.

### Standard of Review

When a claim is not properly preserved, our review, if any, is limited to plain error.

Rule 30.20; *State v. Parker*, 208 S.W.3d 331, 334 (Mo.App. S.D.2006). "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

### Discussion

In his sole point on appeal, Defendant claims the trial court plainly erred in allowing the jury to view State's Exhibit 2, the CAC tape, during its deliberations because that action violated his right to a trial by a fair and impartial jury, as well as his right to due process, in that the exhibit, being testimonial in nature, unduly emphasized and bolstered Victim's testimony, allowing the jury to give it undue weight.

■ Defendant concedes in his brief that his claim of error was not properly preserved for appellate review; thus, he requests that we review this claim for plain error under Rule 30.20. Plain error review involves a two-prong determination. *Parker*, 208 S.W.3d at 335. First, we determine whether plain error, that is, error that is evident, obvious, and clear, exists. *Id.* If we so conclude, then we advance to the second prong of the analysis, to consider whether a manifest injustice or miscarriage of justice has actually occurred as a result of the error. *Id.*

■ Defendant's challenge here is not to the trial court's initial admission of Exhibit 2, but, rather, to the trial court's decision to allow Exhibit 2 to be shown to the jury during its deliberations.[1] This distinction, among others, makes the Mis-

---

1. Section 492.304 allows for the admissibility of a videotape in a child sexual abuse case if the recording was made when the child was under the age of fourteen, when certain other requirements are met. Section 492.304.3 provides: "If the visual and aural recording of a verbal or nonverbal statement of a child is admissible under this section and child testifies at the proceeding, it shall be admissible in addition to the testimony of the child at the proceeding whether or not it repeats or duplicates the child's testimony."

souri Supreme Court's determination in *State v. Justus* immaterial to our analysis here. *State v. Justus*, 205 S.W.3d 872, 874 (Mo. banc 2006)(Justus challenged his first-degree child molestation conviction on the basis that *admission* of victim's statements violated his constitutional right to confront and cross-examine adverse witnesses, because child victim was unavailable as witness at trial and Justus had no opportunity to cross-examine her).[2] It is within the trial court's sound discretion whether a properly admitted exhibit will be shown to the jury during deliberations. *State v. Irby*, 254 S.W.3d 181, 191 (Mo. App. E.D.2008). Generally, exhibits that are testimonial in nature cannot be given to the jury during its deliberation, for the reason that such exhibits tend to unduly emphasize some of the testimony, raising the possibility the jury would afford it undue weight. *Parker*, 208 S.W.3d at 338, n. 8. However, we agree with the view expressed by the Southern District in *Parker*, that videotapes, such as Exhibit 2, do not fall within this bar. *Id.*

In *Parker*, the child victim and the interviewer testified, and the videotaped interview was played for the jury during trial. *Id.* at 339. On appeal, the defendant asserted that the trial court plainly erred and abused its discretion in sending a CAC videotape to the jury during its deliberations, over the defendant's objections. *Id.* at 337. During deliberation, the jury viewed the videotape in the courtroom, and

the tape was played only once. *Id.* at 339. As does Defendant here, Parker maintained the court's action was error because the videotape "was testimonial in nature, which resulted in [the victim's] testimony being unduly bolstered and emphasized, allowing the jury to give it undue weight." *Id.* at 337. The Southern District held that "[b]eing a quasi-deposition, the videotaped interview was 'distinct' and not duplicative of [the child victim's] testimony at trial," and it concluded that the videotape "could not be considered testimonial evidence such that it was prohibited from being viewed by the jury during its deliberations." *Id.* at 339. Under the given circumstances, the Southern District found no error or abuse of discretion in the trial court's decision to permit the jury to view the videotape. *Id.*

The circumstances before us here are almost identical to those in *Parker*. A.K. and the CAC interviewer both testified, and Exhibit 2 was played for the jury during trial. *Id.* A.K. testified that, during the interview, A.K. had elaborated on the touching incidents beyond what she was willing to talk about in her mother's presence, indicating that the videotape was distinct and not a duplicate of A.K.'s trial testimony. *See id.* at 338 n. 9 (distinguishing holding in *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987), as prohibiting use of videotape to wholly duplicate live testimony of child witness); *see also State v. Skipper*, 101 S.W.3d 350, 353–54 (Mo.App.

---

**2.** In *Justus*, the Supreme Court considered whether the victim's hearsay statements, admitted under Section 491.075 and contained in a videotaped interview, were testimonial in nature. *Justus*, 205 S.W.3d at 877–81. In making its determination, the Court examined the circumstances surrounding the interview, noting that the interview involved direct questioning, and that the interviewer, while not a government worker, was acting as a government agent when she interviewed the child victim. *Id.* at 880. The Court further noted

that the interview was performed to preserve the child's testimony for trial, and it opined that, even at four years old, the child victim was aware that her statement could be used to prosecute the defendant and that the interviewer was likewise aware of the interview's purpose. *Id.* Concluding that the primary purpose of the interview was "to establish or prove past events potentially relevant to later criminal prosecution[,]" the Court determined the child victim's statements were testimonial. *Id.* at 880–81.

S.D.2003) (child victim's out-of-court statements to third parties possess unique strengths and weaknesses, thus videotaped statements were distinct and not duplicative of trial testimony). The trial court below controlled the jury's exposure to Exhibit 2 during deliberation by having it view the videotape in the courtroom and by playing the recording only once. *Parker*, 208 S.W.3d at 339. Under these circumstances, we likewise find no error or abuse of discretion in the trial court's decision to allow the jury to view State's Exhibit 2 during its deliberations. *Id.*

Point denied.

■ In its brief, the State points out that the trial court's judgment incorrectly reflects that Defendant was sentenced upon entry of a guilty plea and asks this Court to correct the judgment nunc pro tunc to indicate that Defendant was convicted by a jury. The record supports this amendment; the clerical mistake of checking the incorrect box can be corrected by a nunc pro tunc order. *See State v. Scott*, 298 S.W.3d 913, 918 (Mo.App. E.D.2009). Accordingly, we remand with instructions to the trial court to enter an amended written judgment indicating that Defendant was found guilty by a jury.

### Conclusion

The judgment of the trial court is affirmed. We remand with instruction to amend the written judgment to find that Defendant was convicted by a jury.

KURT S. ODENWALD, P.J., and GEORGE W. DRAPER III, J., concur.