STATE of Missouri, Respondent,

v.

Curtis J. SHORE, Appellant.

No. SD 30467.

Missouri Court of Appeals,
Southern District,
Division One.

July 29, 2011.

Craig A. Johnston, Columbia, for Appellant.

Chris Koster, Atty. Gen., and John W. Grantham, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Curtis J. Shore ("Appellant") appeals his convictions for one count of the class A felony of murder in the first degree, a violation of section 565.020, and one count of the unclassified felony of armed criminal action, a violation of section 571.015.[1] Following a jury trial, Appellant was sentenced to life without parole on the murder charge and thirty years on the armed criminal action charge with the sentences to run consecutively. In his two points relied on Appellant asserts the trial court abused its discretion in allowing "evidence of and testimony about out-of-court, cardboard, target-shooting experiments conducted with the alleged murder weapon ..." and erred in overruling his motion for new trial based on a claim regarding a *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violation. We affirm the judgment and sentence of the trial court.

Appellant does not challenge the sufficiency of the evidence to support his conviction. Viewing the evidence in the light most favorable to the jury's verdict, *State v. Tisius,* 92 S.W.3d 751, 757 (Mo. banc 2002), the record reveals that Appellant and his friend, Walter Hahn ("Victim"), spent January 23, 2007, running around together and imbibing alcohol. After earlier exchanging words due to inappropriate comments Appellant made to Victim's wife and then having a disagreement based on their apparent theft of a trailer from a neighbor, Appellant and Victim became embroiled in an altercation in the yard of Appellant's home. Victim, after having threatened to kill Appellant, purportedly punched Appellant in the face and threw a cell phone at him. These actions by Victim prompted Appellant to enter his home, retrieve a shotgun, return to the yard, and shoot Victim in the chest from approximately 20 feet away.[2] Victim died of his gunshot wounds. Appellant was thereafter charged with the crimes of murder and armed criminal action. A trial was held on September 14–17, 2009. At the conclusion of the evidence, the jury found Appellant guilty of murder in the first degree and armed criminal action and he was sentenced by the trial court as set out above. This appeal followed.

In his first point relied on Appellant asserts the trial court erred in overruling his objections and in "allowing evidence of and testimony about out-of-court, cardboard, target-shooting experiments conducted with the alleged murder weapon ..." which were introduced "to determine the distance from which [Victim] had been shot...." He maintains the consideration of this evidence was error "in that it was not shown that the experiments were conducted under conditions substantially similar in essential particulars to the conditions prevailing at the time of the charged shooting."

■■■ "A trial court has broad discretion to admit or exclude evidence at trial." *State v. Daniels,* 179 S.W.3d 273, 280 (Mo. App.2005). "The admissibility of experimental evidence is also within the sound discretion of the trial court." *State v. Hitchcock,* 329 S.W.3d 741, 752 (Mo.App. 2011). "This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion." *State v. Madorie,* 156 S.W.3d 351, 355 (Mo. banc 2005). "This occurs when a ruling is

---

1. Unless otherwise stated, all statutory references are to RSMo 2000.

2. Appellant claimed he was forced to shoot Victim in self-defense and in defense of his premises.

'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *State v. Watling,* 211 S.W.3d 202, 206 (Mo.App.2007) (quoting *State v. Brown,* 939 S.W.2d 882, 883 (Mo. banc 1997)). "Additionally, on direct appeal, this Court reviews the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Forrest,* 183 S.W.3d 218, 223–24 (Mo. banc 2006) (quoting *State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999)). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

At trial, Detective John Stephens ("Detective Stephens") of the Camden County Sheriff's Department testified that at the request of the State he utilized the t-shirt worn by Victim at the time of his death to "recreate the shot pattern that penetrated the shirt" to determine the distance from which Victim was shot. Detective Stephens testified that he placed Victim's t-shirt on a white cardboard target, "flat[t]ened the shirt out," and "used a black marker to trace the [shot] pattern from the shirt on top [of] the white cardboard." The State's attorney then requested to have Exhibit 54, the white cardboard target with the black marks illustrating the shot pattern on it, admitted into evidence. Appellant's defense counsel objected to this testimony and the introduction of the exhibit on the basis that Detective Stephens and the other witnesses that were going to be called by the State on the issue of the shot pattern were not experts; that the evidence was irrelevant; that the testimony was prejudicial; that the shot pattern evidence was only disclosed a few days prior to trial; that "there's a lot of inherited assumption ...

that only an expert could speak to the angle they were shot at ...;" and that the use of the cardboard in the test "affects the integrity of the test." The trial court overruled the objection and the white cardboard target was admitted into evidence.

Thereafter, Captain Tony Helms ("Captain Helms") of the Camden County Sheriff's Department testified he was the "firearms instructor for the County," he carried five firearms instructor certifications, and taught at several state and local firearm academies. *See State v. Barnhart,* 587 S.W.2d 308 (Mo.App.1979). He stated that at the request of the State he took the shotgun used in Victim's murder, which was loaded with the same type of shells used in the crime, to a gun range where he set up targets at distances varying from five to twenty-five feet. After measuring the distances with a tape measure, Captain Helms aimed each shot at "center mass" on the various targets and fired the shotgun. He related that at one point in the test it began to rain and he had to wait for the rain to pass to finish the tests. The State's attorney then moved to have Exhibits 55 to 60, the targets shot by Captain Helms at the firing range, entered into evidence. Appellant's defense counsel renewed his previous objection to such testimony and observed there was no proper foundation "laid for the admission of these exhibits." He argued the experiments were not "scientifically done.... Certainly wasn't scientifically laid out at those distances. A tape measure ... was laid on the ground.... There's no proper foundation for the admission of the exhibits." The State's attorney countered that there was no issue with admitting the exhibits as Appellant had the right to cross-examine Captain Helms and "[t]his goes to the weight and credibility of the evidence and

not admissibility." The trial court, again, overruled defense counsel's objection.[3] Notably, during his direct testimony Appellant, himself, testified he believed he shot Victim from approximately twenty feet away.

During closing argument, the State's attorney referenced the targets created by Captain Helms and estimated that by comparing the shot pattern from Victim's t-shirt traced by Detective Stephens with the targets prepared by Captain Helms it appeared that Appellant was twenty-one to twenty-five feet away from Victim when he shot him. Indeed, Appellant's defense counsel recited in closing argument that the blood pattern evidence on the driveway showed that Appellant and Victim were fifteen to twenty feet away from each other at the time of the murder. Additionally, defense counsel even made reference to Exhibits 55 to 60, the target evidence prepared by Captain Helms, and noted that the targets revealed the parties were fifteen to twenty feet away from each other at the time of the fatal shot.

■ "Evidence of experiments conducted out of court are admissible, within the discretion of the trial court, 'if it is shown that the experiments were conducted under conditions substantially similar in essential particulars to the conditions prevailing at the time of the occurrence in suit.'" *Hitchcock*, 329 S.W.3d at 754 (quoting *State v. Roberts*, 873 S.W.2d 638, 642 (Mo.App.1994)). "The degree of similarity or difference should be judged in the light of the fundamental principle that any fact should be admissible which logically tends to aid the trier in determination of the issue.'" *State v. Donnell*, 862 S.W.2d 445, 451 (Mo.App.1993), *abrogated on other grounds by State v. Williams*, 936 S.W.2d

828, 832 (Mo.App.1996) (quoting *Blevins v. Cushman Motors*, 551 S.W.2d 602, 610 (Mo. banc 1977)).

■ It is our view that Appellant's point of error cannot prevail. At trial, Appellant's defense counsel objected to the evidence at issue on the basis that it was not relevant. Then he referred to the exhibits when arguing that the jury "can look at [the exhibits]" and "it does match up with what he said. I think if you look at it it shows he's about 15 to 20 feet away. I think [Appellant] is telling you the truth about that and it matches up with what the State presented as well." Appellant cannot, therefore, now argue on appeal that this evidence, which he initially classified as irrelevant and then relied upon in argument to the jury, was so prejudicial that it affected the outcome of his case. *See State v. Turner*, 242 S.W.3d 770, 779 (Mo. App.2008) (holding that an Appellant cannot complain when his strategy at trial fails to succeed).

■ Further, it is clear that there was nothing inappropriate with the way that the tests themselves were conducted. Here, the experiment was conducted to show primarily the surface pattern of the shots and not to show a particular angle or trajectory by which the shots entered the cardboard or flesh. It was the medical examiner who testified Victim was shot in the chest "almost straight front to back" and Captain Helms testified he shot the targets at "center mass." Second, regarding the weather conditions, Captain Helms testified that he halted the tests during the rain and resumed the tests when the weather improved such that there was no issue with the weather. Third, Captain Helms used shotgun shells that were the

---

**3.** Captain Helms was not asked and offered no opinion as to the distance from which Appellant shot Victim.

same kind as those used in the murder. He procured shotgun shells of the same brand and size, utilized them for some of the tests, and even utilized some shells that were located in a box found at Appellant's home from which, ostensibly, the fatal shell originated from. It is our view that Captain Helms' experiments with the targets "occurred under conditions close to those which existed at the time of the crimes. [Appellant] was free to cross-examine [him] about possible differences in the conditions which existed and to argue the differences to the jury." *Id.*; *see State v. Starr*, 676 S.W.2d 311, 314 (Mo.App. 1984).

Additionally, we are mindful that despite offering testimony about preparing the exhibits at issue and conducting the experiment at the firing range, neither Detective Stephens nor Captain Helms offered their opinion as to how far away they believed Appellant was when he shot Victim. It was Appellant who testified the distance was approximately twenty feet between him and Victim at the time of the shooting, and his defense counsel argued on two different occasions in closing argument that Appellant was fifteen to twenty feet away from Victim when he discharged the shotgun. The trial court did not abuse its discretion in admitting the aforementioned evidence. *Daniels*, 179 S.W.3d at 280. Appellant's Point I lacks merit and is denied.

In his second point relied on Appellant maintains the trial court erred in overruling his motion for new trial in which he claimed a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), based on the testimony of one of the State's witnesses, Harvey Galler ("Galler"). Appellant maintains Galler, who had three prior felony convictions, was given a favorable disposition of a pending rape charge against him in exchange for his testimony against Appellant. He points out that a mere five days after Appellant's trial Galler, who had theretofore agreed to plead guilty for a three-year prison sentence, was placed on probation for his offense. Appellant likewise maintains that testimony presented at the hearing on his motion for new trial established that an assistant prosecutor had told Galler's attorney that his assistance in Appellant's trial would be something that the prosecutor might consider regarding his disposition, and Galler's attorney had testified that Galler hoped he would receive some consideration even if no explicit promise had been made.

The record shows Galler testified at the hearing on Appellant's motion for new trial that in June and July of 2008 he "was housed in the same cell as [Appellant] for a couple of days" while the two were in the Laclede County Jail. He related that while sharing a cell Appellant "openly spoke about his case...." He also stated that Appellant told him that Appellant and Victim had been drinking, got into an argument and that after being struck by a cell phone thrown by victim, Appellant "went inside the house and went into the closet and grabbed a gun and loaded it and went outside. When he came outside [Victim] was trying to get away and [Appellant] took aim at him and waited for a good shot and shot him in the chest." Galler also testified Appellant had told him he was going to "get away" with killing victim.[4]

---

4. Upon later returning to the Laclede County Jail a few months later, Galler told his attorney, Stacey Patterson ("Attorney Patterson"), about Appellant's disclosures; she contacted law enforcement officials; a detective spoke with him at the jail; and he made a written statement regarding what Appellant had told him. Galler also related he came forward with this information because Appellant

Additionally, Galler admitted that some consideration on his own case "would be nice," but he was not "worried" about receiving anything in exchange for his testimony. He related that at the time he told his attorney about this information his case was set for trial on January 5, 2009. Appellant's motion for new trial was ultimately denied by the trial court.

■ We review the trial court's denial of a motion for new trial for abuse of discretion. *State v. Parker*, 208 S.W.3d 331, 335 (Mo.App.2006). "The trial court abuses its discretion when its ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

■ "According to *Brady*, due process requires the prosecution to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *State v. Goodwin*, 43 S.W.3d 805, 812 (Mo. banc 2001). Appellant argues the State violated his due process rights as set out in *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* "Evidence is material 'only when there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense.'" *State v. Holden*, 278 S.W.3d 674, 679 (Mo. banc 2009) (quoting *State v. Salter*, 250 S.W.3d 705, 714 (Mo. banc 2008)).

The record shows that at Appellant's hearing on his motion for new trial, Jon Morris ("Assistant Prosecuting Attorney Morris"), testified that he was the assistant prosecuting attorney who tried Appellant's case and that he spoke with Galler on two occasions prior to his testimony. Assistant Prosecuting Attorney Morris testified that he made no "agreement or ... deal ... or promise ..." to Galler regarding his testimony and he was not aware that anyone else had offered Galler anything in exchange for his testimony against Appellant.

Additionally, Angie Hemphill Wright ("Prosecuting Attorney Wright"), who prosecuted Galler on his rape charge in Laclede County, testified that on June 4, 2008, she had offered Galler a four-year plea deal, but was told by Galler's defense counsel, Attorney Patterson, that Galler wanted a better deal. She stated she never spoke with Attorney Patterson "about ... Galler's disposition being tied to his testimony in [Appellant's] case other than it would be something [she] might consider. In other words, if the prosecutor made mention something about the testimony [she] was sure [she] would have considered it, but ..." it was never discussed. She related that

> it would be fair to say that if ... Galler provided some benefit to the [S]tate or somehow ... had some information that was useful in the prosecution of another offender ... that would be something [she] might consider in ... Galler's disposition. But [Attorney] Patterson and [she] didn't have any particular discussion about what that might be that ... Galler could do or what might happen if he did any particular thing.

just seemed real smug about this whole thing. He didn't seem to have any remorse [for] what he ha[d] done. Every time you talked to him he was like, he actually said

that, you know, he was going to get away with killing this guy. He is a cold blooded murderer, in my opinion that's what he is.

She also related that she did agree to continue the trial in Galler's rape case so that he could speak with law enforcement officials about Appellant's case, and that after Appellant's trial, in September of 2009, Prosecuting Attorney Wright extended "a two part offer [to Galler]. Option number one was for a seven year sentence, suspended and five years probation or a two year term in the Department of Corrections." She also testified there was no "secret offer" in relation to Galler's testimony regarding Appellant, and that she offered Galler a better deal in his rape case because the victim had expressed a reluctance to testify.

Attorney Patterson testified that in representing Galler on his rape charge she had had numerous conversations with Prosecuting Attorney Wright about a plea offer for Galler. She related she believed there was initially a three year offer and it was "explicit" in her negotiations that Galler would not be getting special consideration in exchange for his testimony against Appellant. She made it clear to Galler there was no deal involving his testimony, and she stated there was not any "secret deal" with the State. She related that Galler "at one time" stated that he would testify against Appellant "either way," but she felt that "he hoped he would receive some consideration, but no promise was made." She further related she asked for a continuance of Appellant's rape trial because she felt a conflict had developed in her representation.

It is our view that Appellant's argument in this point is unsuccessful because he has failed to prove the State suppressed any material evidence that was favorable to his case. The record shows that based on the testimony of the various attorneys in this matter there was no agreement that Galler would receive any type of special consideration for his testi-

mony against Appellant. Although Galler testified at Appellant's trial that he planned on accepting "a three year plea agreement ..." on the pending rape charge, Prosecuting Attorney Wright made it clear that following Appellant's trial issues arose in Galler's own case which caused her to offer him a better plea deal. Appellant basically asks this Court to speculate that because Galler later received a more favorable agreement than the original plea agreement offered at the time of his testimony that his testimony procured him a better plea agreement. Such a determination would invade the province of the trial court whose role is to determine witness credibility. *State v. Garner*, 976 S.W.2d 57, 60 (Mo.App.1998).

Appellant failed to prove the State had suppressed any evidence that was favorable to him. We cannot say that the trial court abused its discretion in overruling Appellant's motion for new trial. *See State v. Merrick*, 257 S.W.3d 676, 680 (Mo.App. 2008). Appellant's second point is denied.

The judgment of the trial court is affirmed.

LYNCH and BURRELL, JJ., concur.